[Cite as *State ex rel. Jenkins v. Indus. Comm.*, 2017-Ohio-7896.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Ralph Jenkins, | : | |
| Relator, | : | |
| v. | : | No. 16AP-534 |
| Industrial Commission of Ohio and Northwestern Schools, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on September 28, 2017

**On brief:** *Philip J. Fulton Law Office,* and *Chelsea Fulton Rubin,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Ralph Jenkins, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied relator's application for permanent total disability ("PTD") compensation based on a finding that relator voluntarily abandoned the workforce, and to enter an order that requires the commission to adjudicate his application on its merits, without a finding of workforce abandonment.

{¶ 2}   Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate found that the commission violated relator's right to due process of law when it denied relator's PTD application on the basis of voluntary abandonment of the workforce without giving relator an opportunity to present evidence on that issue.  Therefore, the magistrate has recommended that we grant a limited writ of mandamus that provides relator the opportunity to address the issue of voluntary workforce abandonment.

{¶ 3}   The commission has filed objections to the magistrate's decision.  In its first objection, the commission argues that the magistrate erred when it found that relator's right to due process of law was violated because the commission sua sponte denied relator's PTD application on the basis of voluntary workforce abandonment.  Essentially, the commission argues that the issue of voluntary abandonment is always a part of a PTD determination because a claimant is not entitled to PTD compensation if he or she has voluntarily abandoned the workforce.  The commission's argument is misguided.

{¶ 4}   We agree that a claimant is not entitled to PTD compensation if he or she has voluntarily abandoned the workforce and that this issue potentially can be raised in connection with any PTD application.  However, voluntary abandonment of the workforce is an affirmative defense.  Therefore, the burden of proof falls upon the employer or the administrator.  *State ex rel. Black v. Indus. Comm.*, 10th Dist. No. 10AP-1168, 2012-Ohio-2589, ¶ 18, *rev'd. on other grounds*, 137 Ohio St.3d 75, 2013-Ohio-4550.  The commission may also raise this issue sua sponte.  *State ex rel. Garrison v. Indus. Comm.*, 10th Dist. No. 08AP-419, 2009-Ohio-2898, ¶ 46-47.  We agree with the magistrate that due process of law principles require that relator receive notice that the issue of voluntary workforce abandonment has been raised and relator must be given the opportunity to address that issue.

{¶ 5}   Here, it is uncontested that no party raised or argued the issue of voluntary workforce abandonment at the hearing.  Nor did the staff hearing officer ("SHO") raise the issue during the hearing.  It appears that the SHO raised this issue for the first time in the decision denying relator's PTD application.  Therefore, relator had no reason to address this issue at the hearing.  We agree with the magistrate that the commission

violated relator's due process rights by denying his PTD application on the basis of voluntary workforce abandonment without giving relator sufficient notice and an opportunity to present evidence on that issue.  For this reason, we overrule the commission's first objection.

{¶ 6}  In its second objection, the commission contends that the magistrate erred by failing to apply the holding in *State ex rel. Roxbury v. Indus. Comm.*, 138 Ohio St.3d 91, 2014-Ohio-84.  Again, we disagree.

{¶ 7}  *Roxbury* provides guidance regarding what the commission may consider in deciding whether a claimant has voluntarily abandoned the workforce.  However, *Roxbury* is irrelevant to the magistrate's due process analysis.  Until relator has the opportunity to address the issue of voluntary workforce abandonment, *Roxbury* has no application.  Therefore, we overrule the commission's second objection.

{¶ 8}  Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant a limited writ of mandamus and order the commission to vacate the November 12, 2015 order of its SHO and to conduct further proceedings that allow relator the opportunity to rebut the allegation of voluntary workforce abandonment.

*Objections overruled; limited writ of mandamus granted.*

BROWN and SADLER, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Ralph Jenkins, | : | |
| Relator, | : | |
| v. | : | No. 16AP-534 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Northwestern Schools, | : | |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 21, 2017

*Philip J. Fulton Law Office,* and *Chelsea Fulton Rubin,* for relator.

*Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 9}   In this original action, relator, Ralph Jenkins, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the November 12, 2015 order of its staff hearing officer ("SHO") that denies relator's third application for permanent total disability ("PTD") compensation based on a finding that relator voluntarily abandoned the workforce, and to enter an order that adjudicates the application absent a finding of workforce abandonment.

Findings of Fact:

{¶ 10} 1. On November 12, 2003, relator injured his left shoulder and cervical area while employed as a janitor for respondent Northwestern Schools, a state-fund employer under Ohio's workers' compensation laws.

{¶ 11} 2. The industrial claim (No. 03-461176) is allowed for:

> Left shoulder sprain; cervical sprain; left shoulder contusion; left shoulder tendonosis; aggravation of pre-existing osteoarthritis of the left shoulder; aggravation of pre-existing degenerative disc disease; disc herniation at C5-6 and C6-7.

{¶ 12} 3. In January 2004, relator underwent surgery to the cervical spine. The surgery is described as: "Posterior cervical laminectomy at C5, 6, and 7 with foraminotomies at C4-C5, C5-C6, and C6-C7 bilaterally."

{¶ 13} 4. On October 26, 2012, relator filed his first application for PTD compensation.

{¶ 14} 5. On January 31, 2013, at the commission's request, relator was examined by Eugene Lin, M.D. In his four-page narrative report, Dr. Lin opines:

> Review of the medical records shows the claimant was able to tolerate work due to the conditions within the scope of this claim at a medium physical demand level. Current physical examination shows no persistence of any focal motor or sensory deficits. There is good range of motion of the left shoulder. Recent treatment has been chiropractic treatment for self-limited muscle spasms. As such, based on the allowed conditions the claimant would be able to continue to work in a medium demand category.

{¶ 15} 6. On February 15, 2013, Dr. Lin completed a Physical Strength Rating form. On the form, Dr. Lin indicated by his mark that relator is capable of "medium work."

{¶ 16} 7. Following an April 10, 2013 hearing, an SHO issued an order denying relator's first PTD application. For the determination of residual functional capacity, Ohio Adm.Code 4121-3-34(B)(4), the SHO relied exclusively on the report of Dr. Lin and his finding that relator is capable of medium work. The SHO's order also considers the non-medical disability factors. The SHO's order concludes that relator "is capable of sustained gainful employment."

{¶ 17} 8. On December 26, 2013, relator filed his second PTD application.

{¶ 18} 9. On February 10, 2014, at the commission's request, relator was examined by James J. Sardo, M.D. In his four-page narrative report, Dr. Sardo opines "injured worker is capable of medium work."

{¶ 19} 10. On February 10, 2014, Dr. Sardo completed a Physical Strength Rating form. On the form, Dr. Sardo indicated by his mark that relator is capable of "medium work."

{¶ 20} 11. Following an April 1, 2014 hearing, an SHO issued an order denying relator's second PTD application. For the determination of residual functional capacity, the SHO relied exclusively on the report of Dr. Sardo and his finding that relator is capable of medium work. The SHO's order also considers the non-medical disability factors. The SHO's order of April 1, 2014 concludes:

> Finally, the Staff Hearing Officer notes the Injured Worker previously requested permanent total disability compensation and such was denied by order issued 04/16/2013. There is no evidence since that decision to indicate the Injured Worker attempted a return to work or initiated a retraining or rehabilitation program in order to facilitate a return to the work force. This is a factor against the application for permanent total disability compensation.
>
> Accordingly, finding the Injured Worker physically capable of up to medium strength work and noting the Injured Worker's education and work experience are vocational assets for a return to work as well as the fact that the Injured Worker has made no recent attempt to return to the work force, the Staff Hearing Officer finds the allowed conditions do not render the Injured Worker permanently and totally disabled.

{¶ 21} 12. On June 10, 2015, relator filed his third application for PTD compensation.

{¶ 22} 13. On July 27, 2015, at the commission's request, relator was examined by John W. Cunningham, M.D. In his four-page narrative report, Dr. Cunningham opined:

> In my medical opinion, this individual is capable of sedentary physical work activity, provided he is not asked to use his arms at or above mid-chest level, and provided he is not asked to lift, carry, push, pull, or otherwise move objects

greater than 5 lbs. with either or both hands above mid-chest
level.

{¶ 23} 14. On July 27, 2015, Dr. Cunningham completed a Physical Strength Rating form. On the form, Dr. Cunningham indicated by his mark that relator is capable of "sedentary work."

{¶ 24} 15. On November 12, 2015, relator's third PTD application was heard by an SHO. The hearing was not recorded.

{¶ 25} 16. Following the November 12, 2015 hearing, the SHO issued an order denying the third PTD application based on a finding that relator voluntarily abandoned the workforce.

{¶ 26} On the order, the SHO indicates that "Mr. Barnhart" and his client, "Mr. Jenkins," appeared. The order also indicates that "Mr. Goins" appeared for the administrator of the Ohio Bureau of Workers' Compensation ("bureau"). No one appeared for the employer.

{¶ 27} Mailed November 14, 2015, the SHO's order of November 12, 2015 explains:

> The Injured Worker is found to have voluntarily abandoned his employment. Therefore, the Injured Worker has no wages to replace, and he is not entitled to permanent total disability compensation.
>
> The Injured Worker last worked in 2011, when he was 62 years of age. The Injured Worker testified at hearing that he began to receive Social Security Retirement benefits in 2011, when he first qualified for these benefits. There is no evidence that the Injured Worker ever attempted to return to work after 2011.
>
> The Injured Worker was previously denied permanent total disability by the Industrial Commission at hearing on 04/10/2013. The Hearing Officer in that decision found based on the report of Eugene Lin, M.D., the Injured Worker related to the allowed claim retained the capacity to perform work of a medium nature. The Injured Worker after the 04/10/2013 order was issued never attempted to return to work.
>
> The Injured Worker was again denied permanent total disability by the Commission after a hearing on 04/01/2014. The Hearing Officer in that decision relied upon the

02/10/2014 report from James Sardo, M.D. Dr. Sardo found the Injured Worker related to the allowed claim was able to perform work at the medium classification. The Injured Worker after this decision was issued never attempted to return to work.

Related to the Injured Worker's most recent application for Permanent Total Disability, the Injured Worker was examined on behalf of the Industrial Commission by John Cunningham, M.D. on 07/27/2015. Dr. Cunningham's report is on record and is dated 08/05/2015.

Dr. Cunningham states in this report that the Injured Worker told the Doctor he last worked in 2011, the year he retired. Dr. Cunningham states further the Injured Worker reported to him that his symptoms are worse in the last year and that his symptoms have progressed as he has grown older.

Dr. Cunningham does find a significant difference in the Injured Worker's condition compared with the prior reports from Dr. Lin and Dr. Sardo. Dr. Cunningham states in his report that presently the Injured Worker is limited to sedentary work related to the allowed claim. Dr. Cunningham's findings would be consistent with the Injured Worker's reported statements to Dr. Cunningham that he has gotten worse in the last year.

The Injured Worker has on two previous occasions in 2013 and 2014 been found capable of working related to the allowed claim. The Injured Worker after these previous findings never made any attempt to rehabilitate himself or return to work. The Injured Worker appears to have retired for reasons unrelated to the allowed claim and to have voluntarily left the work force.

The Courts have consistently stated that an award of permanent total disability is an award of last resort, and that an Injured Worker prior to qualifying for this award, where he is deemed to have the potential to return to work, must make a good faith effort to return to work. The Injured Worker has not made any effort to return to work after either of the previous denials of his applications for permanent total disability.

The Courts have also stated that an award of permanent total is not made simply because an Injured Worker has grown

older. The Injured Worker's condition, based on the report from Dr. Cunningham, does appear to have worsened since the last denial of permanent total disability compensation in this claim. However, the Injured Worker has never returned to work since 2011. The Injured Worker reportedly told Dr. Cunningham that he retired in 2011. The Injured Worker after previous denials of permanent total disability never attempted a return to work. The Injured Worker has previously been found capable of working and he has never made any attempt to return to work.

Because the Injured Worker abandoned the workforce, he has no wages to replace, and he is not entitled to an award of permanent total disability compensation.

{¶ 28} 17. On November 23, 2015, on form C-86, relator timely moved for the commission's reconsideration of the SHO's order of November 12, 2015.

{¶ 29} 18. On the C-86 form, in the space provided for description of the request, relator stated:

Now comes claimant and moves the Industrial Commission to grant reconsideration on the denial of the permanent total disability from the order issued from [sic] by Staff Hearing Officer Havener on November 12, 2015. The SHO committed a clear mistake of law by adjudicating the issue of voluntary abandonment when no argument was raised below by either the administrator or by the hearing officer in his questioning of the injured worker prior to making a decision. This is a clear error of law according to [*State ex rel. Stevens v. Indus. Comm.,* 10th Dist. No. 10AP-1147, 2012-Ohio-4408]. Furthermore, the previous two orders of the Industrial Commission on the denial of permanent total disability have never raised the issue of voluntary abandonment. Consequently, the matter should be considered to be res judicata, or at least collaterally estopped.

{¶ 30} In support of the motion, relator, through counsel, submitted a memorandum in support of reconsideration and the affidavit of David B. Barnhart, Esq., who appeared at the November 12, 2015 hearing for relator.

{¶ 31} The Barnhart affidavit avers in pertinent part:

I am an attorney licensed to practice law before the Supreme Court of the State of Ohio, and have been so licensed since November of 1981.

Since November of 1981, I have practiced exclusively in the area of workers' compensation.

* * *

On November 12, 2015, I traveled to Portsmouth, Ohio to appear before Staff Hearing Officer John Havener on the claim file of Ralph Jenkins, claim no. 03-461176. The hearing commenced at 9:00 a.m. in Portsmouth. During the course of the hearing, the employer was not present. The only other parties in the room besides the SHO, Mr. Jenkins and me, was Mr. Goins, the BWC representative.

I attach a copy of my notes of the hearing taken on November 12, 2015 at 9:00 a.m. outlining the parties that were present as well as my notes that voluntary abandonment was never argued at the hearing. The reason for this is that the administrative representative, Mr. Goins, never raised the question of voluntary abandonment. His argument was limited to approximately two sentences. (1) The hearing officer should rely upon previous two denials; and (2) Dr. Cunningham indicated the claimant could engage in sedentary work.

Mr. Havener questioned Mr. Jenkins about his employment history. Mr. Jenkins responded to the questions and indicated that, "He and his wife worked at a doctor's office doing cleaning of the doctor's offices two days a week, for one hour each day." Mr. Jenkins indicated his wife did more of the heavier work, such as mopping and sweeping, and Mr. Jenkins cleaned the offices or performed the trash removal."

At no time, did Mr. Havener inquire of me or Mr. Jenkins about the issue of "voluntary abandonment." Mr. Goins never uttered the phrase voluntary abandonment in the course of his argument.

I did not address the issue of voluntary abandonment inasmuch as it was not raised by any of the parties at the hearing. Mr. Havener did not phrase any question regarding the issue of voluntary abandonment. His inquiry was limited strictly to what Mr. Jenkins did for the doctor.

Mr. Jenkins then testified about his difficulties with education, the fact that he did graduate from high school at age 19, after being held back a number of years, and his education being primarily in special education classes. He

> then testified about his other work experience which is that of a truck driver.
>
> At no time were we given the opportunity to address or argue the question of voluntary abandonment inasmuch as there was never a question raised by the hearing officer.

{¶ 32} 19. On December 2, 2015, the three-member commission, on a vote of two-to-one, denied relator's request for reconsideration of the SHO's order of November 12, 2015.

{¶ 33} 20. On July 22, 2016, relator, Ralph Jenkins, filed this mandamus action.

Conclusions of Law:

{¶ 34} The SHO's order of November 12, 2015 finds that relator voluntarily abandoned the workforce and is thus ineligible for PTD compensation. The issue here is whether that finding violated relator's right to due process of law because allegedly relator had no opportunity to rebut the finding.

{¶ 35} Finding that relator's right to due process of law was violated, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

### Procedural Due Process

{¶ 36} "Procedural due process includes the right to a reasonable notice of hearing as well as a reasonable opportunity to be heard." *State ex rel. Finley v. Dusty Drilling Co., Inc.*, 2 Ohio App.3d 323, 324-25 (10th Dist.1981), citing *State ex rel. Allstate Ins. Co. v. Bowen,* 130 Ohio St. 347 (1936).

{¶ 37} "[T]he right to a reasonable opportunity to be heard includes reasonable notice of the time, date, location and *subject matter* of the hearing." (Emphasis sic.) *State ex rel. LTV Steel Co. v. Indus. Comm.,* 102 Ohio App.3d 100, 103-04 (10th Dist.1995) citing *Finley.*

{¶ 38} Moreover, "procedural due process requirements cannot be satisfied by implication." *State ex rel. Steinbrunner v. Indus. Comm.*, 10th Dist. No. 05AP-626, 2006-Ohio-3444, ¶ 16, citing *Finley.*

{¶ 39} "The due process rights conferred by the United States and Ohio Constitutions must be recognized and upheld during administrative proceedings such as those before the commission." *Id.*

{¶ 40} In *State ex rel. Canter v. Indus. Comm.,* 28 Ohio St.3d 377 (1986), on application for reconsideration of the termination of temporary total disability compensation, the commission ordered the appeal to be heard by its SHOs. The staff obtained from Dr. Kackley a supplemental report which was dated October 18, 1984 without further examination. Later, the SHOs denied the appeal specifying Dr. Kackley's reports of February 1, 1983 and October 18, 1984 as the basis for their decision. Albert R. Canter then filed a mandamus action in this court. This court denied the writ and Canter appealed as of right to the Supreme Court of Ohio.

{¶ 41} In *Canter*, the Supreme Court states:

> Appellant complains that Dr. Kackley's report of October 18, 1984 "* * * was rendered after the hearing, the * * * [appellant] was not given an opportunity to present further evidence or to rebut Dr. Kackley's opinion, and any order rendered on such an opinion amounts to an *ex parte* hearing. * * *" Appellant contends that the lack of a chance to rebut Dr. Kackley's latest report was a denial of due process of law.
>
> In *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.* (1974), 419 U.S. 281, 288, at fn. 4, the Supreme Court stated: "* * * A party is entitled, of course, to know the issues on which [the] decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it. Indeed, the Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation. *Ohio Bell Telephone Co. v. Pub. Utilities Comm.*, 301 U.S. 292 (1937); *United States v. Abilene & S. R. Co.*, 265 U.S. 274 (1924). * * *." See, also, *Goldberg v. Kelly* (1970), 397 U.S. 254, 267-268. Thus, Dr. Kackley's report of October 18, 1984 could not be considered by the Industrial Commission's staff hearing officers without contravening appellant's constitutional rights.

*Id.* at 380.

{¶ 42} *Canter* has been followed in numerous cases involving workers' compensation. *State ex rel. Chrysler Plastic Prods. Corp. v. Indus. Comm.*, 39 Ohio

App.3d 15 (10th Dist.1987); *State ex rel. Owens-Illinois, Inc. v. Indus. Comm.*, 61 Ohio St.3d 456-57 (1991); *State ex rel. Didiano v. Beshara*, 65 Ohio St.3d 256-57 (1992).

### Basic Law—PTD—Workforce Abandonment

{¶ 43} Ohio Adm.Code 4121-3-34 provides the commission's rules for the adjudication of PTD applications.

{¶ 44} Thereunder, Ohio Adm.Code 4121-3-34(D) provides guidelines for the adjudication of PTD applications.

{¶ 45} Ohio Adm.Code 4121-3-34(D)(1)(d) currently provides:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 46} Paragraphs two and three of the syllabus of *State ex rel. Baker Material Handling Corp. v. Indus. Comm.,* 69 Ohio St.3d 202 (1994) state:

> An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market.

> An employee who retires subsequent to becoming permanently and totally disabled is not precluded from eligibility for permanent total disability compensation regardless of the nature or extent of the retirement.

### Burden of Proof—The *Quarto* Case

{¶ 47} In *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997), the employer, Quarto Mining Company, filed a mandamus action challenging the commission's award of PTD compensation to the claimant, Glen Foreman. Quarto failed to raise the retirement issue administratively. In effect, Quarto argued before the court "that the issue raises itself by virtue of being manifest in the record." *Id.* at 81.

{¶ 48} In denying the writ, the Supreme Court explained:

Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." * * * Nor do appellate courts have to consider an error which the complaining party "could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." * * *

These rules are deeply embedded in a just regard for the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus, they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal.

* * *

The suggestion here is that, since it is claimant's burden to prove that his disability is causally related to allowed conditions in the claim, it is necessarily claimant's burden to prove that nonallowed conditions played no part in his decision to retire.

The argument is misguided. The claimant's burden is to persuade the commission that there is a proximate causal relationship between his work-connected injuries and disability, and to produce medical evidence to this effect. * * * The claimant's burden in this regard does not extend so far as to require him to raise, and then eliminate, other possible causes of his disability. This is not a case in which the cause remains unexplained as in slip-and-fall cases. Here, the claimant has produced direct medical evidence linking his disability with the injuries allowed in the claim. This evidence is sufficient to establish a prima facie causal connection. The burden should then properly fall upon the employer to raise and produce evidence on its claim that other circumstances independent of the claimant's allowed conditions caused him to abandon the job market.

*Id.* at 81, 83-84.

### The *Stevens* Case

{¶ 49} As earlier noted, in his November 23, 2015 motion for reconsideration, relator, through counsel, cited to this court's decision in *State ex rel. Stevens v. Indus.*

*Comm.,* 10th Dist. No. 10AP-1147, 2012-Ohio-4408.  Accordingly, a review of that case is appropriate here.

{¶ 50} Following an unrecorded hearing, an SHO granted PTD compensation to Sophia Stevens.  The administrator of the Ohio Bureau of Workers' Compensation moved the full commission to reconsider the order because the SHO failed to consider the issue of voluntary abandonment.  The full commission then scheduled a hearing to determine whether the SHO had made a clear mistake of law.  The commission's order stated:

> "Specifically, the Staff Hearing Officer's order failed to address the issue of whether the Injured Worker voluntarily abandoned the job market, *which was raised by the Administrator at hearing*.  The issue of abandonment is an affirmative defense that should have been addressed. Therefore, the Commission exercises continuing jurisdiction * * * in order to correct this error."

(Emphasis sic.)  *Id.* at ¶ 5.

{¶ 51} The commission therefore considered the question of voluntary abandonment and determined that Stevens had not abandoned her employment. Nevertheless, the commission went on to determine that Stevens was not entitled to PTD. *Id.*

{¶ 52} Stevens' complaint for a writ of mandamus filed in this court alleged "there is no evidence in the record" showing that the abandonment issue was administratively raised by the administrator.  *Id.* at ¶ 6.

{¶ 53} In denying the writ, this court explained:

> To be entitled to the requested extraordinary relief in mandamus, relator had to establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the commission, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, ¶ 6, 960 N.E.2d 452. The burden on relator is a heavy one. As the Supreme Court of Ohio recently explained, the standard of proof in mandamus cases is proof by clear and convincing evidence. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 55, 958 N.E.2d 1235. In such a case, a relator must submit facts and produce proof that is plain, clear, and convincing before we may grant a writ. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161, 228 N.E.2d 631 (1967). The elements

required for mandamus relief reflect this heightened standard in two ways—by requiring "a 'clear' legal right to the requested extraordinary relief and a corresponding 'clear' legal duty on the part of the respondents to provide it." *Doner* at ¶ 56.

Relator has not met the heightened burden required for mandamus relief. She presented no evidence, let alone clear and convincing evidence, to prove a clear legal right or duty arising from the commission's alleged failure to raise the issue of voluntary abandonment before the SHO. Instead, relator relied on the absence of evidence in the stipulated record before us to argue there was no evidence to support the commission's factual finding that the issue was raised, thus shifting the burden to the respondents to prove that the issue was raised and, therefore, that relator has no right to the relief.

This court addressed a similar issue in *State ex rel. Ormet Corp. v. Indus. Comm.*, 10th Dist. No. 87AP-1187, 1989 Ohio App. LEXIS 3773 (Sept. 26, 1989), in which the relator alleged that its due process rights were violated when the commission denied it an opportunity to rebut a medical report. The relator did not file a transcript of the hearing at which the alleged error occurred. In denying a writ of mandamus, this court stated:

> Relator is correct that the Industrial Commission claim file does not indicate exactly what transpired at the August 25, 1987 hearing. But in so contending, relator forgets who has the burden of proof in an original action in mandamus to show both that the Industrial Commission abused its discretion and that there is a clear legal right to the requested relief. That burden is upon relator. If there be a deficiency in the evidence, it is because the relator failed in its burden of proof and its burden of presenting evidence.

This court went on to state that, "relator could have requested an admission as to what transpired in this regard, filed an affidavit with respect to what transpired, or taken a deposition of someone who was present as to what transpired at the hearing." The relator's failure to take these actions, however, left a record that was silent on the critical question of what transpired at the hearing. "When

confronted with a silent record," this court said, "a reviewing court will ordinarily presume that the proceedings were conducted in a proper manner rather than in an improper manner. Thus, we will not presume that the Industrial Commission affirmatively denied relator an opportunity to present further evidence * * *."

Similarly here, while our record reflects a finding by the commission, after a hearing, that the issue of voluntary abandonment was raised before the SHO, our record does not indicate exactly what transpired before the SHO or the full commission because we have no transcript of either hearing. Nor does our record reflect any steps taken by relator to complete the record in any other ways. A silent record does not change the applicable burdens under the facts of this case, however. The relator, not the respondent, bears the burden to prove entitlement to mandamus relief, and a relator may not avoid that burden simply by noting the absence of a transcript. Just as this court concluded in *Ormet*, we conclude here that, if there is a deficiency in the record, it is because relator failed in her burden of proof. Having failed to meet her burden, she is not entitled to relief in mandamus on the question of continuing jurisdiction, and we sustain the commission's objection to the magistrate's decision.

*Id.* at ¶ 7-11.

### The Commission's Authority to Sua Sponte
### Raise an Issue in Adjudicating a PTD Application

{¶ 54} In *State ex rel. Garrison v. Indus. Comm.*, 10th Dist. No. 08AP-419, 2009-Ohio-2898, this court, speaking through its magistrate, stated:

Nothing in the *Quarto Mining* case prohibits the commission from sua sponte raising the defense of voluntary abandonment or removal from the workforce. Nothing in the *Quarto Mining* case prohibited the SHO from questioning relator regarding the circumstances of his October 30, 2003 job departure and on that basis entering a determination on the issue.

While the *Quarto Mining* court placed the burden on the employer to raise and produce evidence on the retirement issue, it did not prohibit the commission itself from undertaking the burden of raising the issue and producing evidence by questioning the PTD claimant.

*Id.* at ¶ 46-47.

{¶ 55} The magistrate notes that this court adopted the magistrate's decision as its own, including the findings of fact and conclusions of law. However, in its opinion, this court did not directly discuss the commission's sua sponte authority.

{¶ 56} Nevertheless, *Garrison* is authority for the proposition that the commission has authority to sua sponte raise an affirmative defense to a PTD application.

### Analysis

{¶ 57} Here, as in *Stevens,* we have an unrecorded hearing at issue.

{¶ 58} The SHO's order of November 12, 2015 denies relator's third PTD application based solely on a finding that relator voluntarily abandoned the workforce. On motion for reconsideration, relator claimed a deprivation of due process of law because the bureau's representative at the hearing, Mr. Goins, did not raise the issue of workforce abandonment, nor did the SHO mention workforce abandonment at the hearing. According to relator, because the issue was not raised at the hearing, he had no reason to endeavor to rebut the issue at the hearing.

{¶ 59} According to relator, because the SHO *sua sponte* addressed workforce abandonment *after* the hearing and the commission refused to grant reconsideration, relator was deprived of due process of law.

{¶ 60} As the *Stevens* case instructs, relator has the burden of proof in this mandamus action to show by clear and convincing evidence his entitlement to the writ. *Stevens* instructs as to how an unrecorded hearing can be remedied by a party who bears the burden of proof. That is, relator can file an affidavit as to what transpired at the hearing.

{¶ 61} Here, relator's counsel did file an affidavit averring that workforce abandonment was not raised by the bureau at the hearing, and that the SHO failed to indicate at the hearing that workforce abandonment was an issue to be addressed by the SHO in the order to be issued.

{¶ 62} Significantly, the bureau could have offered an opposing affidavit but did not do so.

{¶ 63} Under the circumstances, the magistrate finds that relator has met his burden in this mandamus action showing that relator was deprived of due process of law by the absence of any meaningful notice that workforce abandonment would be sua sponte addressed in the order adjudicating the PTD application.

{¶ 64} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the November 12, 2015 order of its SHO that denies the PTD application, and to conduct further proceedings that allow relator the opportunity to rebut the allegation of voluntary workforce abandonment.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).