THE STATE EX REL. BLACK, APPELLEE, *v*. INDUSTRIAL COMMISSION OF OHIO ET AL.; PARK OHIO INDUSTRIES, INC., APPELLANT.

[Cite as *State ex rel. Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550.]

*Workers' compensation—Permanent-total-disability compensation—Voluntary retirement—Abandonment of the workforce—Court of appeals' judgment granting a limited writ of mandamus reversed—Writ denied.*

(No. 2012-1163—Submitted July 9, 2013—Decided October 17, 2013.)

APPEAL from the Court of Appeals for Franklin County, No. 10AP-1168, 2012-Ohio-2589.

_____

**Per Curiam**.

{¶ 1} Appellant, Park Ohio Industries, Inc., appeals from the judgment of the Tenth District Court of Appeals granting a limited writ of mandamus that ordered the Industrial Commission to vacate its order denying permanent-total-disability compensation to appellee, Billy G. Black, and to enter a new order that properly determines whether Black is eligible for permanent-total-disability compensation, after he has retired from the workforce.

{¶ 2} Because the record contained some evidence to support the commission's decision that Black's retirement was voluntary and not injury-induced, we hold that the commission did not abuse its discretion when it determined that Black was ineligible for permanent-total-disability compensation. Therefore, we reverse the judgment of the court of appeals and deny the writ.

{¶ 3} Black was employed as a press operator for Park Ohio, a self-insured employer, when he injured his lower back on October 17, 2000. He was seen by Dr. Elizabeth Mease, who diagnosed lumbar strain and placed him on

modified activity with restrictions. He returned to work two days later and was assigned to clean bathrooms. After a few hours, he returned to Dr. Mease, who indicated that Black should not engage in any activity.

{¶ 4} On November 10, 2000, Dr. Mease authorized Black to return to work with restrictions and referred him to Dr. Mark Panigutti, an orthopedic physician. Black saw Dr. Panigutti on November 15, 2000, and again on December 11, 2000.

{¶ 5} On December 11, Dr. Panigutti opined that Black had not yet reached maximum medical improvement, but that his prognosis was good. He authorized Black to return to work on December 13, 2000, with weight and standing restrictions for one month, and after one month, to return to full duty. Also on December 11, Black notified his employer that he intended to retire on February 28, 2001.

{¶ 6} Black returned to work on modified duty on December 13, 2000. On January 22, 2001, Black saw Dr. Panigutti for back pain and a possible hernia. Dr. Panigutti increased Black's weight restrictions based in part on complaints of pain unrelated to his back injury.

{¶ 7} Black worked until February 9, 2001. He retired on February 28, 2001, at the age of 55 with 38 years of service. At no time following his retirement did Black pursue vocational training or seek other employment. In September 2001, he began receiving Social Security disability benefits. The record does not contain an explanation of the reasons for granting these benefits, but Black testified in 2009 that they may have included, in part, his lack of education and medical conditions not related to his industrial injury.

{¶ 8} On August 14, 2009, Black applied for permanent-total-disability compensation. Following a hearing on July 1, 2010, a hearing officer denied his application. The hearing officer noted that there was no medical evidence that any physician had advised Black to retire because of his previously allowed

injuries and that Black had not worked or looked for work since his retirement on February 28, 2001. Thus, the hearing officer concluded that Black's retirement was both voluntary and an abandonment of the entire workforce, making him ineligible for subsequent permanent-total-disability compensation.

{¶ 9} Black sought a writ of mandamus in the Tenth District Court of Appeals, alleging that the commission had abused its discretion and arbitrarily denied his request for permanent-total-disability compensation.

{¶ 10} A magistrate determined that Dr. Panigutti's December 11, 2000 office note—describing Black as unable to perform his regular job duties but able to perform light or modified job duties with certain restrictions for a month—was medical evidence that Black's decision to retire "could have been" induced by his industrial injury. 10th Dist. Franklin No. 10AP-1168, 2012-Ohio-2589, ¶ 55. According to the magistrate, the December 11, 2000 note was "medical evidence upon which the commission could have relied in determining whether the job abandonment was injury induced," and thus it was clearly inaccurate for the commission, through its staff hearing officer, to declare that " '[t]here is no medical evidence that [the retirement] was induced by the industrial injury.' " *Id*. at ¶ 56.

{¶ 11} The magistrate also concluded that the commission appeared to improperly shift the burden of proof to Black when it stated that there was no medical evidence that a physician had advised Black to retire, strongly suggesting that the lack of medical evidence was a determinative factor in its decision to deny benefits. Consequently, the magistrate recommended that the court of appeals issue a limited writ of mandamus ordering the commission to enter a new order that properly determined Black's eligibility. *Id*. at ¶ 57-59.

{¶ 12} Both Park Ohio and the commission filed objections to the magistrate's recommendation, and Black responded to those objections. The court of appeals overruled the objections and issued a limited writ ordering the

commission to vacate the order denying benefits based on ineligibility and enter an order that properly determines Black's eligibility for permanent-total-disability compensation.

{¶ 13} Park Ohio filed an appeal as of right.

{¶ 14} A claimant's eligibility for permanent-total-disability compensation may be affected if the claimant has voluntarily retired or abandoned the job market for reasons not related to the industrial injury. *State ex rel. McAtee v. Indus. Comm.*, 76 Ohio St.3d 648, 670 N.E.2d 234 (1996); *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 531 N.E.2d 678 (1988). Thus, the character of the employee's retirement—whether voluntary or involuntary—is critical to the commission's analysis of a claimant's right to permanent-total-disability compensation. *State ex rel. Cinergy Corp./Duke Energy v. Heber*, 130 Ohio St.3d 194, 2011-Ohio-5027, 957 N.E.2d 1, ¶ 5.

{¶ 15} Park Ohio appeals the court of appeals' decision requiring the commission to redetermine the character of Black's retirement. According to Park Ohio, the commission did consider evidence of Black's medical condition at or near the time of his retirement and, based on its review of that evidence, concluded that no physician had advised him to retire and that his retirement was not induced by his industrial injury. The commission specifically considered Dr. Panigutti's report of January 22, 2001, the date most contemporaneous with Black's retirement:

> There is no medical evidence that any physician advised the Injured Worker to retire as a result of the allowed injuries. The Injured Worker saw his treating orthopedist in January 2001. At the time the lifting restriction was increased to fifty pounds due to groin pain which the doctor stated was unrelated to the Injured Worker's back condition.

4

**{¶ 16}** According to Park Ohio, this statement in the commission's order demonstrated that the hearing officer had reviewed the medical evidence as required by Ohio Adm.Code 4121-3-34(D)(1)(d) and had concluded that the evidence did not support Black's assertion that his retirement was induced by his industrial injury.

**{¶ 17}** Next, Park Ohio contends that the commission did not wrongfully shift the burden of proof from Park Ohio to Black. Park Ohio maintains that the lack of medical evidence that Black's retirement was injury-induced was simply a factual finding based on the evidence produced and reviewed, i.e., Dr. Panigutti's January 2001 report and Black's notice of intent to retire submitted after he was released to return to work on December 11, 2000. Park Ohio argues that this evidence, along with Black's failure to work or to look for work following his retirement, demonstrated that Park Ohio had met its burden of proving that Black had voluntarily abandoned the workforce. *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 83, 679 N.E.2d 706 (1997).

**{¶ 18}** Whether a claimant has voluntarily retired or has abandoned the workforce is a question of fact for the commission to determine. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 10. This court has described the question of abandonment as " 'primarily * * * [one] of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts.' " *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381, 383, 544 N.E.2d 677 (1989), quoting *State v. Freeman*, 64 Ohio St.2d 291, 297, 414 N.E.2d 1044 (1980). Accordingly, the commission must consider all relevant circumstances, including evidence of the claimant's medical condition at or near the time of departure from the workforce, if submitted, and any other evidence that would substantiate a connection between

the injury and retirement. Ohio Adm.Code 4121-3-34(D)(1)(d); *Cinergy Corp.*, 130 Ohio St.3d 194, 2011-Ohio-5027, 957 N.E.2d 1, ¶ 7.

**{¶ 19}** The commission is exclusively responsible for evaluating the weight and credibility of the evidence. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20-21, 508 N.E.2d 936 (1987). If the commission's order is supported by some evidence in the record, then the commission has not abused its discretion and mandamus is not appropriate. *Id.* at 21.

**{¶ 20}** Here, the commission focused on Black's return to work and the contemporaneous notice of his intent to retire in two months. The order specifically referred to his return to work on December 13, 2000, two days after he had decided to retire. The order also addressed Black's subsequent visit to Dr. Panigutti in January 2001, when the doctor increased Black's weight restrictions due to pain unrelated to his industrial injury. Based on this evidence, the commission concluded that there was no medical evidence submitted at or around the time Black announced his planned retirement that a physician had advised him to retire. The commission did not abuse its discretion by basing its determination that Black's retirement was voluntary in part on the failure to present evidence that he had retired because he was unable to perform his job due to his injuries. *See State ex rel. Mackey v. Ohio Dept. of Edn.*, 130 Ohio St.3d 108, 2011-Ohio-4910, 955 N.E.2d 1005, ¶ 6.

**{¶ 21}** In addition, the order noted that Black's last day of work was on February 9, 2001, that he had officially retired on February 28, 2001, and that he had neither worked nor looked for work since his retirement. Based on these facts, the commission concluded that Black's retirement was not only voluntary but also was an abandonment of the entire workforce. *See State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 69 Ohio St.3d 202, 631 N.E.2d 138 (1994), paragraph two of the syllabus (employee whose retirement is voluntary

and an abandonment of the entire job market is ineligible for permanent-total-disability compensation).

{¶ 22} A reviewing court's role is to determine whether there is some evidence in the record to support the commission's decision. When doing so, a court must not substitute its judgment for that of the commission or second-guess the commission's evaluation of the evidence. *State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637, 977 N.E.2d 643, ¶ 11. That is what the appellate court has done in this case. The court of appeals did not find a lack of evidence to support the commission's decision, but rather determined that the commission had misconstrued the evidence considered. The court erred in doing so.

{¶ 23} Because the record contained some evidence to support the commission's decision that Black's retirement was voluntary and not injury-induced, we hold that the commission did not abuse its discretion when it determined that Black was ineligible for permanent-total-disability compensation. Consequently, we reverse the judgment of the court of appeals and deny the writ.

Judgment reversed

and writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Michael DeWine, Attorney General, and Stephen Plymale, Assistant Attorney General, for Industrial Commission.

Fisher & Phillips, L.L.P., Daniel P. O'Brien, and Mark E. Snyder, for appellant.

_____