[Cite as *State ex rel. Navistar, Inc. v. Indus. Comm.*, 2017-Ohio-8976.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Navistar, Inc., | : | |
| Relator, | : | |
| v. | : | No. 16AP-776 |
| Industrial Commission of Ohio and Gary E. Bisdorf, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 12, 2017

**On brief:** *Vorys, Sater, Seymour and Pease LLP,* and *Corrine S. Carman,* for relator. **Argued:** *Corrine S. Carman.*

**On brief:** *Michael DeWine,* Attorney General, and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio. **Argued:** *Cheryl J. Nester.*

**On brief:** *Stanley R. Jurus Law Office,* and *Michael J. Muldoon,* for respondent Gary E. Bisdorf. **Argued:** *Michael J. Muldoon.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Navistar, Inc., commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to Gary E. Bisdorf ("claimant") and to enter a new order denying the application for PTD or, in the alternative, remand the matter for further proceedings.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, including findings of fact and conclusions of law.  The magistrate recommended we grant a limited writ ordering the commission to consider the issue of voluntary abandonment of the workforce prior to determining the merits of claimant's PTD application.  Both the commission and claimant filed objections to the magistrate's decision.  For the following reasons, we sustain the objection filed by the commission, overrule claimant's objection in part as moot and in part as premature, deny relator's request for a writ of mandamus as to the issue of voluntary abandonment of the workforce, and return the cause to the magistrate to consider the remainder of relator's complaint.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}   None of the parties challenge the magistrate's findings of fact, and we adopt them as our own.  A summary of pertinent facts, as more thoroughly set forth in the magistrate's decision, are as follows.  Claimant sustained work-related injuries in 1971 and 2001 while employed as an assembler for relator.  After each injury, claimant filed for workers' compensation benefits, and claims were allowed for both the 1971 and 2001 injuries.

{¶ 4}   In 2007, claimant moved for and a district hearing officer ("DHO") granted claimant temporary total disability ("TTD") compensation.  In doing so, the DHO found that claimant had voluntarily resigned his employment with relator in 2003 but had found other employment and was performing his other job when he again became temporarily and totally disabled.

{¶ 5}   On November 25, 2015, claimant filed an application for PTD compensation with the commission based on the October 22, 2015 report of David Grunstein, D.C., which concluded that claimant's work-related injuries have resulted in claimant being permanently and totally disabled from any type of sustained remunerative employment.  Claimant was then examined by physicians at the request of the commission and relator.  Christopher Holzaeffel, M.D., issued a January 18, 2015 report concluding claimant is capable of returning to sustained remunerative employment.  James Rutherford, M.D., issued a March 15, 2016 report concluding claimant reached maximum medical

improvement concerning all allowed conditions and that based on the orthopedic claim allowances under consideration, claimant is incapable of work.

{¶ 6}   A hearing on the PTD application was held before a staff hearing officer ("SHO") of the commission on May 10, 2016.  The hearing was recorded and transcribed for the record.  Claimant was the sole witness to testify at the hearing.  During direct examination, claimant testified he left relator's business after over 30 years of employment, then worked at a gun store for about six and one-half years until the store closed down.  Claimant testified that at the gun store job he worked in sales and taught shooting classes, but he could not stand on his feet all day.  On cross-examination, claimant agreed that after he worked for relator, he considered himself retired and was not actively looking for a job when he was approached about the job at the gun store and agreed that he left the gun store when it went out of business.  Claimant testified he did not look for other similar work after the gun store closed because he was at the point that he could not stand anymore or sit for very long.  Counsel for relator never directly asked the SHO to determine whether claimant voluntarily abandoned the workforce following the closing of the gun store.

{¶ 7}   The SHO granted claimant's application for PTD compensation based on the March 15, 2016 report of Dr. Rutherford and the October 22, 2015 report of Dr. Grunstein.  The order of the SHO does not mention voluntary abandonment of the workforce.  Relator filed a request for reconsideration with the commission asserting the SHO failed to consider the facts of claimant's voluntary, non-disability retirement as required by Ohio Adm.Code 4121-3-34(D)(1)(d) and asserting challenges to the reports of Dr. Rutherford and Dr. Grunstein.  A three-person panel of the commission denied reconsideration.

{¶ 8}   On November 15, 2016, relator filed with this court a complaint for a writ of mandamus.  In the complaint, relator asserted that "the [c]ommission abused its discretion by awarding PTD without first ruling on the issue of claimant's voluntary retirement, an issue raised by [relator], as required by Ohio Admin Code §4121-3-34(D)(1)(d)," because an employee who voluntarily retires is ineligible for PTD under R.C. 4123.58(D)(3).  (Compl. for Writ of Mandamus at 4-5.)  Relator alternatively asserted that the commission's reliance on the opinions of Dr. Rutherford and Dr. Grunstein is error

because the respective reports are "conclusory, contradictory," and "do not restrict the opinions therein to medical impairment." (Compl. for Writ of Mandamus at 5.) As a result, relator contended the reports of Dr. Rutherford and Dr. Grunstein are not "some evidence" to support the award of PTD compensation. (Compl. for Writ of Mandamus at 5.) Relator additionally asserted the SHO abused his discretion in not exploring certain factors or considering vocational evidence.

{¶ 9} The magistrate issued his decision on June 22, 2017. In it, the magistrate found that given relator's counsel elicited testimony from claimant that could support a finding he voluntarily abandoned the workforce following the closing of the gun store, and given the extensive body of developing case law regarding the defense of workforce abandonment that the commission is expected to be familiar with, relator clearly raised the issue of voluntary workforce abandonment. Therefore, the magistrate recommended this court issue a writ of mandamus ordering the commission to vacate its order awarding PTD compensation and to enter an order that determines whether claimant voluntarily abandoned the workforce following the closing of the gun store. The magistrate further specified that if the commission determines the claimant voluntarily abandoned the workforce, the commission should deny PTD compensation, and if the commission determines that claimant did not voluntarily abandon the workforce, it should address the merits of the PTD application.

{¶ 10} As previously indicated, both the commission and claimant filed objections to the magistrate's decision.

## II. OBJECTIONS

{¶ 11} The commission sets forth the following objection:

> The magistrate erred in finding that the Industrial Commission of Ohio was under an legal obligation to address the issue of voluntary abandonment of the workforce when the employer failed to raise that issue as an affirmative defense at the administrative hearing.

{¶ 12} Claimant did not delineate specific objections but, rather, "strongly object[s] to the Magistrate's recommendation in this case." (Claimant's Objs. at 2.) In his memorandum in support of his objection, claimant asserts the commission did not abuse its discretion because relator waived the affirmative defense of voluntary abandonment,

the record did not support abandonment of the workforce, and the award of PTD compensation was proper.

## III. DISCUSSION

### A. Commission's Objection

{¶ 13} Under its sole objection, the commission contends the magistrate erred in finding the commission was under a legal obligation to address the issue of voluntary abandonment of the workforce when the employer failed to raise that issue as an affirmative defense at the administrative hearing.

{¶ 14} Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matter " 'to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.' " *State ex rel. William E. v. Indus. Comm.*, 10th Dist. No. 12AP-205, 2013-Ohio-1017, ¶ 6, quoting Civ.R. 53(D)(4)(d). In order to be entitled to a writ of mandamus, relator must establish a clear legal right to the relief sought, a clear legal duty on the part of the respondent to perform the requested act, and the lack of an adequate remedy in the ordinary course of law. *Id.* at ¶ 9. This is a "heavy burden" that must be supported by proof that is "plain, clear, and convincing." *Id.* Thus, absent clear and convincing proof that relator raised the issue of voluntary abandonment of the workforce before the SHO, relator cannot establish the SHO had a clear legal duty to address that issue. *Id.* at ¶ 11.

{¶ 15} "A claimant's eligibility for permanent-total-disability compensation may be affected if the claimant has voluntarily retired or abandoned the job market for reasons not related to the industrial injury." *State ex rel Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 14. *State ex rel. Jenkins v. Indus. Comm.*, 10th Dist. No. 16AP-534, 2017-Ohio-7896, ¶ 4; Ohio Adm.Code 4121-3-34(D)(1)(d). "Thus, the character of the employee's retirement—whether voluntary or involuntary—is critical to the commission's analysis of a claimant's right to permanent-total-disability compensation." *Black* at ¶ 14, citing *State ex rel. Cinergy Corp./Duke Energy v. Heber*, 130 Ohio St.3d 194, 2011-Ohio-5027, ¶ 5.

{¶ 16} Pertinent administrative guidelines "expressly require the hearing officer to address the issue of voluntary abandonment." *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 20, citing Ohio Adm.Code 4121-3-34(D)(1)(d).

However, a hearing officer is only required to address issues that are properly raised. *Id.* at ¶ 21 (noting the failure to raise an argument to the hearing officer constitutes waiver), citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81-83 (1997); *Jenkins* at ¶ 3-5 (stating voluntary abandonment of the workforce is an affirmative defense and specifically rejecting the proposition that issue of voluntary abandonment is always a part of a PTD determination).

{¶ 17} If the issue of voluntary retirement or abandonment of the workforce is raised, a hearing officer's failure to address the issue constitutes a mistake of law justifying the commission's decision to reconsider the matter. *State ex rel. Stevens v. Indus. Comm.*, 142 Ohio St.3d 313, 2015-Ohio-1352, ¶ 17, citing Ohio Adm.Code 4121-3-34(D)(1)(d); *State ex rel. Mackey v. Ohio Dept. of Edn.*, 130 Ohio St.3d 108, 2011-Ohio-4910, ¶ 5; *State ex rel. Hayes v. Indus. Comm.*, 10th Dist. No. 01AP-1087, 2002-Ohio-3675, ¶ 4.

{¶ 18} Conversely, if the issue of voluntary retirement or abandonment of the workforce is not raised, and the SHO nonetheless addresses the issue for the first time in its order, the commission abuses its discretion and may violate due process protections afforded to the parties. *See Jenkins* at ¶ 5 (holding the commission violated claimant's due process rights by denying his PTD application on the basis of voluntary workforce abandonment where the issue was not raised at the hearing). In this context, due process demands a claimant have sufficient notice an issue has been raised and an opportunity to present evidence on that issue. *Id.*

{¶ 19} Resolution of this case centers on what actions sufficiently raise the issue of voluntary retirement or abandonment of the workforce when contesting a claimant's request for PTD compensation. Relator implies that under Ohio Adm.Code 4121-3-34(D)(1)(d) and the commission's "obligation to know and apply the relevant case law," relator sufficiently raised the issue by producing evidence that may support claimant's voluntary departure from the workforce prior to his application for PTD compensation. (Relator's Memo. in Opp. to Commission's Objs. at 3.) Ohio Adm.Code 4121-3-34(D)(1)(d) provides:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force,

the injured worker shall be found not to be permanently and totally disabled. *If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.*

(Emphasis added.)

{¶ 20} First, as previously discussed, the issue of whether the injured worker voluntarily removed himself or herself from the workforce must be raised and is subject to waiver. *Jenkins* at ¶ 3-5. Furthermore, the second sentence of Ohio Adm.Code 4121-3-34(D)(1)(d) plainly guides the hearing officer to consider certain specific medical evidence that is submitted if evidence of voluntary removal or retirement is brought into issue. It does not state a standard to decide whether the defense of voluntary abandonment is raised before the SHO. We decline to read more into the rule than it states.

{¶ 21} Second, case law suggests that while counsel for the employer need not state "magic words" to raise voluntary retirement or workforce abandonment as an issue, the issue is not considered raised simply because evidence that may support a finding of voluntarily workforce abandonment exists in the record. (Memo. Contra Commission's Objs. at 5.) *See, e.g., State ex rel. Mackey v. Dept. of Edn. & Indus. Comm.*, 10th Dist. No. 09AP-966, 2010-Ohio-3522, ¶ 8, 16, *aff'd*, 2011-Ohio-4910 (considering the issue of voluntary retirement to be sufficiently raised where, at the hearing, the parties discussed claimant's retirement, her employer argued the retirement was voluntary, and evidence was presented on the issue); *Quarto Mining* at 81-82 (finding even though the record contained evidence of retirement, the commission did not abuse its discretion by not addressing a claimant's possible voluntary retirement where the employer had failed to raise the issue in the administrative hearing); *State ex rel. Garrison v. Indus. Comm.*, 10th Dist. No. 08AP-419, 2009-Ohio-2898, ¶ 44.

{¶ 22} In this case, it is undisputed that until its motion for reconsideration, relator did not argue claimant voluntarily retired after the gun store closed and abandoned the workforce, did not ask the SHO to determine whether claimant had voluntarily retired or removed himself from the workforce, or otherwise invoked the administrative statute corresponding to this issue. At the hearing, counsel for relator did elicit testimony from claimant about his work history after retiring from relator's business and why claimant

did not look for work after the gun store closed. The commission, faced with relator's request for reconsideration contending claimant's voluntary retirement should have been addressed, denied relator's motion for reconsideration. The magistrate, on the other hand, believed claimant's testimony, in the context of pervasive case law discussing workforce abandonment, "clearly raised" the issue, and, therefore, the commission had a duty to address the issue. (Mag.'s Decision at ¶ 77.)

{¶ 23} We disagree with the magistrate. As previously stated, relator has the burden to show, by clear and convincing evidence, its entitlement to the writ, including a clear legal right to the relief sought and a clear legal duty on the part of the commission to perform the requested act. *William E.* at ¶ 9. We do not find the evidence in this case *clearly* shows that voluntary retirement was "brought into issue," pursuant to Adm.Code 4121-3-34(D)(1)(d), to support a writ of mandamus. Absent clear and convincing proof that relator raised the issue before the SHO, relator cannot establish that the SHO's failure to address the issue in her opinion constituted an abuse of discretion. *Id.* at ¶ 11. Moreover, in this close case, relator has not met its heightened burden to show the commission had a clear legal duty to reopen the matter on relator's motion for reconsideration or that relator has a clear legal right to the relief sought. Therefore, we find relator is not entitled to the extraordinary remedy of mandamus on this issue. *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977) (warning mandamus is an extraordinary remedy, "to be issued with great caution and discretion and only when the way is clear").

{¶ 24} Accordingly, we sustain the commission's objection.

**B. Claimant's Objections**

{¶ 25} As a preliminary issue, we note claimant has not delineated specific objections pursuant to Civ.R. 53(D)(3)(b)(ii). In the interest of justice, we will address claimant's objections as gleaned from the body of his memorandum in support of objections. *State ex rel. Turner v. Bunting*, 10th Dist. No. 15AP-605, 2016-Ohio-1325, ¶ 3. Claimant essentially contends there is no basis to find an abuse of discretion occurred in this case because relator waived the affirmative defense of voluntary abandonment of the workforce, the record did not support abandonment of the workforce, and because the commission's decision to grant claimant PTD compensation is proper.

{¶ 26} First, we sustained the commission's objection concerning voluntary abandonment of the workforce. Therefore, claimant's objections to the magistrate's conclusions regarding this issue are moot.

{¶ 27} Second, we find claimant's general allusion to the SHO's proper conclusion on the merits of the PTD compensation application to be premature at this time. The magistrate only considered whether voluntary workforce abandonment was raised and did not consider the remainder of relator's complaint for mandamus, which included claims of error related to the evidence in support of claimant's PTD compensation award. Therefore, pursuant to Civ.R. 53(D)(4)(b), we return the matter to the magistrate to consider the remainder of relator's complaint in the first instance.

{¶ 28} Accordingly, we overrule claimant's objection in part as moot and in part as premature.

## IV. CONCLUSION

{¶ 29} Following review of the magistrate's decision, an independent review of the record, and due consideration of the objections, we adopt the magistrate's findings of fact as our own but reject the magistrate's conclusions of law. We sustain the commission's sole objection and overrule claimant's objections in part as moot and in part as premature. We deny relator's request for a writ of mandamus on the question of voluntary abandonment of the workforce and remand the matter to the magistrate, pursuant to Civ.R. 53(D)(4)(b), in order for the magistrate to rule on the remainder of relator's complaint.

*Objection sustained*;
*cause remanded.*

TYACK, P.J., and LUPER SCHUSTER, J., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Navistar, Inc., | : | |
| Relator, | : | |
| v. | : | No. 16AP-776 |
| The Industrial Commission of Ohio and Gary E. Bisdorf, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 22, 2017

*Vorys, Sater, Seymour and Peace LLP,* **and** *Corrine S. Carman,* **for relator.**

*Michael DeWine,* **Attorney General, and** *Cheryl J. Nester,* **for respondent Industrial Commission of Ohio.**

*Stanley R. Jurus Law Office,* **and** *Michael J. Muldoon,* **for respondent Gary E. Bisdorf.**

## IN MANDAMUS

**{¶ 30}** **In this original action, relator, Navistar, Inc. ("Navistar"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the May 10, 2016 order of its staff hearing officer ("SHO") awarding to respondent Gary E. Bisdorf ("claimant") compensation for permanent total disability ("PTD"), and to enter an order determining that claimant voluntarily abandoned the workforce, and is thus ineligible for PTD compensation. In the alternative, Navistar requests that the writ order the commission to vacate the SHO's order of May 10, 2016 on**

grounds that the relied upon medical reports provide no evidence that the allowed medical conditions alone prohibit sustained remunerative employment.

Findings of Fact:

{¶ 31} 1. Claimant has two industrial claims arising from his employment as an assembler for Navistar, a self-insured employer under Ohio's workers' compensation laws.

{¶ 32} 2. On November 7, 1971, claimant injured his left knee when a gas tank slipped and hit his left knee. The industrial claim (No. 493424-22) is allowed for "bruise left knee lower patella area; degenerative arthritis left knee; chondromalacia patella left knee."

{¶ 33} 3. On December 19, 2001, claimant injured his right shoulder when a tool broke while he was pulling down. The claim (No. 01-880461) is allowed for "right shoulder strain; partial rotator cuff tear right shoulder; right shoulder disorder."

{¶ 34} 4. Claimant had right shoulder surgery in March 2002. This included an arthroscopic rotator cuff repair. Later that same year, claimant underwent further right shoulder surgery.

{¶ 35} 5. Claimant has had several surgeries to his left knee. In July 2007, he had a left total knee arthroplasty.

{¶ 36} 6. On August 30, 2007, claimant moved for temporary total disability ("TTD") compensation beginning July 23, 2007 which is the date of the left knee arthroplasty.

{¶ 37} 7. On September 21, 2007, Navistar filed with the commission a Navistar document captioned "Application For Non-Contributory Retirement Benefits." The application is signed by claimant as the applicant. It presents February 28, 2003 as the "Retirement Date." A monthly life income benefit is explained.

{¶ 38} 8. Also on September 21, 2007, Navistar filed another document captioned "Supplemental Information Form." This form was completed by claimant on January 9, 2003.

{¶ 39} 9. Following a September 28, 2007 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation beginning July 23, 2007.

Although the DHO found that claimant had voluntarily resigned his employment with Navistar during 2003, he further found that claimant "subsequently obtained other employment and was performing his other job when he again became temporarily and totally disabled."

{¶ 40} 10. Navistar administratively appealed the DHO's order of September 28, 2007.

{¶ 41} 11. Following a November 6, 2007 hearing, an SHO issued an order affirming the DHO's order of September 28, 2007.  The SHO's order explains:

> The Injured Worker did retire from the employer of record, but he returned to work with a new employer. He was working at the time that he became unable to work related to the allowed conditions in this claim.

{¶ 42} 12. On October 10, 2015, at claimant's request, he was examined by chiropractic physician David M. Grunstein.  Following the examination, Dr. Grunstein issued a one-page report captioned "Functional Capacities Evaluation."  The report states:

> [One] In an 8 hour workday this person can stand/walk:   1 hour
>
> [Two] This person can stand at one time for 4-5 minutes
>          This person can walk at one time for 3-4 minutes
>
> [Three] In an 8 hour workday this person can sit for 2-3 hours
>
> [Four] This person can sit at one time for 20-30 minutes
>
> [Five] Lifting/Carrying limitations:
> A.) Up to 10 pounds: occasionally
> B.) 11-20 pounds: occasionally, with difficulty and increased pain
> C.) 21-50 pounds: not at all
> D.) 51-100 pounds: not at all
>
> [Six] Hands can be used for repetitive actions such as:
> Simple grasping: Right hand  yes   Left hand  yes
> Fine manipulation: Right hand  yes    Left hand  yes
>
> [Seven] Feet can be used for repetitive movement as in operating foot controls:

Right foot:  Yes     Left foot:  No

[Eight] Patient is able to:
A.) Work above the shoulder level: never
B.) Bend/twist turn [at] waist: occasional and limited
C.) Squat:  never
D.) Crawl:  never
E.) Climb:  never
F.) Push/pull:  occasional and limited

[Nine] Other restrictions or limitations this person has:  This injury has resulted in this person suffering with sleep deprivation.

{¶ 43} 13. On October 22, 2015, Dr. Grunstein issued a four-page report to claimant's counsel.  The report states:

> ***History of the 12-19-01 injury:*** *In the course of employment this person was injured as above described when he was torqueing a fitting and the wrench broke and this resulted in right shoulder injury. He has undergone 2 shoulder surgeries, both arthroscopic and he has undergone post operative physical therapy with each surgery. He also notes that he took oral pain medications.*
>
> ***History of the 11-07-71 injury:*** *In the course of employment this person was injured when a stack of fuel tanks were bumped into by a forklift and the stack fell and struck his left leg. He states that he had undergone 8 knee surgeries, with the final surgery being a total knee replacement. He also notes that he partook in a lot of physical therapy and that he took oral pain medications.*
>
> ***Present complaints of the 12-19-01 injury:*** *He describes having constant right shoulder pain. Right shoulder weakness and crepitus. Limited movement of the shoulder and he also notes that following the second surgery, the shoulder quit dislocating, but still has a tendency towards subluxating. He notes increased pain with damp, cold weather. This pain disrupts sleep on a nightly basis.*
>
> ***Present complaints of the 11-07-71 injury:*** *[C]onstant moderate to severe knee pain. He notes that he cannot straighten the knee, and he cannot fully bend the knee. He cannot squat or kneel. Ambulation of stairs is difficult and*

> *limited and he notes increased pain with damp, cold weather. This pain disrupts sleep often.*
>
> ***Treatment:*** *He was taking oral NSAIDS, but they were irritating his stomach to the point that he had to stop taking them, and now he takes nothing for the pain and he notes that it is a struggle to deal with this amount of pain on an on going basis.*

(Emphasis sic.)

{¶ 44} Following the above statements, Dr. Grunstein explains how he determined that claimant suffers a 25 percent whole person impairment for the shoulder injuries, a 30 percent whole person impairment for the left knee injuries, and a 3 percent whole person impairment for "chronic intractable pain."  He concludes that the impairments combine to equal a total whole person impairment of 50 percent.

{¶ 45} In the last paragraph of his report, Dr. Grunstein opines:

> *Based on the consultation and examination findings above stated and how these findings correlate with the A.M.A. Guides, it is my opinion that the above named presented in this office with a total whole person impairment of **<u>50 percent whole person impairment</u>**, on the above stated date, for the above stated conditions. Also note that when considering the above stated information and attached functional capacities evaluation, I am of the opinion that these injuries have resulted in this person being **permanently and totally disabled** from partaking in any type of sustained remunerative employment and is therefore **<u>permanently and totally disabled</u>**.*

(Emphasis sic.)

{¶ 46} 14. On November 25, 2015, claimant filed an application for PTD compensation.  In support, claimant submitted the one-page report dated October 10, 2015 from Dr. Grunstein captioned "Functional Capacities Evaluation" and the four-page report dated October 22, 2015 from Dr. Grunstein.

{¶ 47} 15. On January 18, 2016, at Navistar's request, claimant was examined by Christopher D. Holzaeffel, M.D., who practices orthopedics.

{¶ 48} 16.  Dr. Holzaeffel issued a five-page narrative report, stating:

It is my medical opinion, based on the allowed conditions of right shoulder disorder (NOS); sprain, right shoulder; tear, right rotator cuff; arthritis, left knee; and chondromalacia, left knee, Mr. Bisdorf is capable of returning to sustained remunerative employment. The claimant has good function regarding his left knee, including the ability to sit for 2 hours at a time and walk for 20-30 minutes at a time. The claimant states he is taking no pain medication regarding his left knee. The claimant has a mild antalgic gait regarding his left lower extremity, but this is due to an injury to the left Achilles tendon. The claimant has only mild pain and loss of range of motion of the right shoulder associated with the objective findings noted on examination. He does have some mild weakness of forward flexion and abduction.

* * *

It is my medical opinion, the claimant is able to return to sustained remunerative employment with the following restrictions: It is my medical opinion, the claimant would be able to sit for no more than 2 hours at a time and walk for no more than 20-30 minutes at a time. He would be unable to ascend or descend stairs on a repetitive basis, and no stooping beyond 90 degrees of left knee flexion. He would also have a 10-pound lifting restriction, and restriction of his overhead activities to no more than 2 hours in an eight-hour work day.

{¶ 49} Furthermore, Dr. Holzaeffel opines that the right shoulder injuries produce an 8 percent whole person impairment, for a total of 28 percent whole person impairment for all the allowed conditions of the two industrial claims.

{¶ 50} 17. On March 4, 2016, at the commission's request, claimant was examined by James H. Rutherford, M.D. Dr. Rutherford examined for all the allowed conditions in the two industrial claims. In his six-page narrative report that he signed on March 15, 2016, he opined that claimant has reached maximum medical improvement ("MMI") concerning all of the allowed conditions in both claims.

{¶ 51} On the last page of his narrative report, Dr. Rutherford opines:

Because the above described orthopedic impairments related to the claim allowances of the two claims under consideration, Mr. Bisdorf is not capable of doing work activity, or incapable of work activity, and I have indicated

on the Physical Strength Rating Form, Mr. Bisdorf is not capable of doing occasional standing and walking for work activity. He can do no stooping, climbing, or crawling for work activity. Mr. Bisdorf also can do no above-shoulder work activity with his right upper extremity. He can do no repetitive pushing or pulling with his right upper extremity. Mr. Bisdorf can lift up to 5 lbs. maximum with his right upper extremity. He can only lift up to 10 lbs. maximum using both upper extremities. Because of his orthopedic impairments and the functional limitations of those impairments, Mr. Bisdorf is not capable of doing even sedentary work activities as defined by the Ohio Bureau of Workers' Compensation and the U.S. Department of Labor.

It is thus my medical opinion that, based only on the orthopedic claim allowances of the two claims under consideration, that Mr. Gary Bisdorf is incapable of work, and I have indicated this on the Physical Strength Rating Form.

{¶ 52} 18. On a "Physical Strength Rating" form, Dr. Rutherford indicated by his mark "[t]his Injured Worker is incapable of work."

{¶ 53} 19. On May 10, 2016, the PTD application was heard by an SHO. The hearing was recorded and transcribed for the record. Claimant appeared at the hearing and testified, first on direct examination by his counsel, and then on cross-examination by Navistar's counsel. No other witnesses appeared for the hearing.

{¶ 54} 20. During direct examination, the following exchange occurred:

**Q. And you left Navistar, what, after 32 years?**

A. 30.2 years.

**Q. Okay. You could have continued working?**

A. Yes, I could continue working. I was only 52 years old.

**Q. It became too difficult for you?**

A. Yeah, yeah. I was spending more time on the table getting operated on than I was working.

**Q. Okay. And then you did go get another job afterwards?**

A. Yes, I did. I wasn't really looking for another job, but a gentleman that I knew from working at International, Barry Laughlin, had talked me into coming and working in a gun store because they knew that I used to shoot years ago and they wanted somebody to teach CCW classes for them. So I went and did that for about six and a half years until they closed the store down.

You know, they put me over in sales for a while, but I couldn't do that. I can't stand around on my feet all day, and teaching the shooting classes, I was on my feet at the range. I just couldn't do it anymore.

(Emphasis sic.) (Tr. at 8-9.)

{¶ 55} 21. During cross-examination, the following exchange occurred:

Q. Just a couple of questions for you, sir. Are you right-handed or left?

A. I'm right-handed.

Q. You indicated that after you left Navistar you went to become a certified instructor. You said --

A. I already was a certified instructor.

Q. You went to go work in that capacity?

A. Yes.

Q. You mentioned you weren't really looking for a job. Why not?

A. Because I just retired. Just done 30 years in a factory.

Q. You considered yourself retired?

A. Yeah, I considered myself retired.

Q. Why did you leave that job in 2010?

A. At the gun store?

Q. Yeah.

A. They closed the store. They went out of business.

**Q. All right. Did you look for any other similar work?**

A. No.

**Q. Why not?**

A. I was to the point I couldn't stand anymore, I couldn't sit very long so -- I taught a lot of CCW classes and a lot of people started teaching them and they were doing a hundred students at a time and I couldn't do that.

(Emphasis sic.) (Tr. at 10-12.)

{¶ 56} Following the cross-examination of claimant, Navistar's counsel launched into a lengthy discussion of the medical and vocational reports before the SHO. Early in that discussion, Navistar's counsel argues:

Chiropractor Grunstein renders the claimant medically [incapable] of all work. Claimant took a regular retirement from Navistar in 2003. He went on to work for six years doing gun sales and handgun instruction and indicated on the PTD application that he never lifted more than ten pounds in that job.

(Tr. at 14-15.)

{¶ 57} Notwithstanding the above transcript evidence, Navistar's counsel never directly asked the SHO to determine whether claimant had voluntarily removed himself from the workforce following the closing of the gunshop. Navistar's counsel did not verbally invoke Ohio Adm.Code 4121-3-34(D)(1)(d) relating to voluntary workforce removal during the May 10, 2016 hearing.

{¶ 58} Also, there is no indication in the hearing transcript that Navistar's counsel made any reference to the Navistar retirement documents that were filed September 21, 2007 in defense of claimant's August 30, 2007 motion for TTD compensation beginning the date of the left knee surgery.

{¶ 59} 22. Following the May 10, 2016 hearing, the SHO mailed an order on May 13, 2016 awarding PTD compensation beginning October 22, 2015 based on the medical reports of Drs. Grunstein and Rutherford. Based on those medical reports, the SHO found that claimant is unable to perform any sustained remunerative employment. Consequently, the SHO determined it was unnecessary to discuss or analyze the non-medical disability factors. The SHO's order does not address or mention whether claimant may be ineligible for PTD compensation because allegedly he voluntarily abandoned the workforce. The SHO's order of May 10, 2016 states:

> The start date for the award of Permanent Total Disability Compensation of 10/22/2015 is based upon the 10/22/2015 report of David Grunstein, D.C. who opined within a report of that date that the Injured Worker was permanently and totally disabled from partaking in any type of sustained gainful remunerative employment. The Staff Hearing Officer finds that the Injured Worker's allowed condition[s] [in] his claims have reached Maximum Medical Improvement based upon the 3/15/2016 report of Dr. Rutherford.
>
> * * *
>
> Particularly, Dr. Rutherford examined the Injured Worker on behalf of the Industrial Commission on 03/04/2016 and determined that the Injured Worker "is not capable of doing occasional standing and walking for work activity." The Staff Hearing Officer finds that Ohio Adm.Code 4121-3-34(B)(2)(a) provides specifically that:
>
> "Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."
>
> The Injured Worker's allowed conditions of his left leg are in claim 493424-22. Dr. Rutherford found that the Injured Worker was not capable of doing occasional standing and walking for work activity; he subsequently found that the Injured Worker was incapable of work.
>
> Based upon the reports of James Rutherford, M.D., dated 03/15/2016, and David Grunstein, D.C., dated 10/22/2015, it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical conditions. Therefore, pursuant to State ex rel. Speelman v.

<u>Indus. Comm.</u>, 73 Ohio App.3d 757, 598 N.E.2d 192 (10th Dist. 1992), it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.

{¶ 60} 23. On May 27, 2016, Navistar moved for reconsideration of the SHO's order of May 10, 2016.

{¶ 61} The memorandum in support of the motion sets forth three grounds in support of reconsideration. The first ground is captioned:

The order awarding PTD failed to consider the fact of claimant's voluntary, non-disability retirement as required by Ohio Admin Code 4121-3-34(D)(1)(d).

(Emphasis omitted.)

{¶ 62} The second ground challenges the report of Dr. Rutherford. The third ground challenges the report of Dr. Grunstein. The second and third grounds will not be presented here.

{¶ 63} In support of the first ground as above captioned, Navistar's memorandum argues:

An employee who voluntarily retires for reasons unrelated to the allowed injury prior to becoming permanently and totally disabled, is ineligible for PTD compensation. Ohio Rev. Code §4123.58(D)(3). Where a claimant initiates retirement for reasons other than his * * * industrial injury [he] is considered to have voluntarily retired. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44. An election of regular retirement and not disability, i.e. Social Security, demonstrates claimant's intent to leave the labor force at the time of retirement which precludes permanent total disability compensation. [*State ex rel. McAtee v. Indus. Comm.*, 76 Ohio St.3d 648, 650 (1996)].

Where evidence of voluntary retirement is brought into issue;

[T]he adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement. Ohio Admin.Code §4121-3-34(D)(1)(d), "Guidelines for adjudication of applications for permanent total disability compensation."

The consideration of voluntary retirement is mandated in the introductory paragraph to the rule which directs that the guidelines contained within the rule "shall be followed by the adjudicator." Id. There can be no mistake that voluntary retirement was an issue at the staff hearing. Both written evidence and testimony were presented on the subject. Claimant's injuries occurred in 1971 (493424-22) and 2001 (01-880461). He continued to work for more than thirty years after his left knee injury and two years after his right shoulder injury, taking regular retirement in 2003. The record includes claimant's January 9, 2003 application for non-contributory retirement benefits through the employer's pension plan (Attached hereto as Exhibit "A.") Included with the form is claimant's completed supplemental information form which verifies that he was not receiving social security disability benefits at the time of his retirement on February 28, 2003.

After retiring, he abandoned the workforce, and wasn't looking for work elsewhere because "I just retired. Just done 30 years in a factory." Transcript of SHO hearing at P.11, Lines 6-11. The testimony continued;

Q. You considered yourself retired?

A. Yeah, I considered myself retired. Trans. at p.11, lines 10-11.

He did not apply for Social Security Disability, only Social Security retirement. See, IC-2 (PTD Application), page 3, and Trans. at p.3, lines 12-22.

A few years into his retirement, a former coworker "talked me into" working in a gun store and teaching classes, which he did until the store closed in 2010. Trans. at p.9, line 4. This closed period of employment does not alter the fact that at the time of his retirement, he intended to leave the workforce. Claimant conceded that he was not looking for work at the time, and he did not search for work when the store closed. Trans. p.9, line 1.

Claimant does not dispute the voluntary nature of his departure from the workforce. The Staff Hearing Officer simply overlooked it. Despite the foregoing testimony and documentation provided to the hearing officer, the PTD order is silent on the subject of claimant's retirement. A clear

> mistake of law was committed by the failure to comply with the Commission's rule that the adjudicator of PTD "shall" consider evidence of claimant's retirement. Ohio Admin.Code § 4121-3-34(D)(1)(d). As a result, the order should be vacated and the matter remanded for a new hearing and decision which considers evidence of claimant's retirement.

(Emphasis sic.)

{¶ 64} 24. As indicated in Navistar's memorandum in support of reconsideration, attached thereto as exhibit A, are the Navistar documents captioned "Application for Non-Contributing Retirement Benefits" and "Supplemental Information Form" that were filed by Navistar on September 21, 2007 in defense of claimant's August 30, 2007 motion for TTD compensation.

{¶ 65} 25. On July 1, 2016, the three-member commission mailed an order denying Navistar's motion for reconsideration.

{¶ 66} 26. On November 15, 2016, relator, Navistar, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 67} The issue is whether the commission abused its discretion by failing to determine whether claimant voluntarily removed himself from the workforce and, thus, is ineligible for PTD compensation.

{¶ 68} Finding that the commission abused its discretion, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

**The Issue Must Be Raised**

{¶ 69} In *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997), the Supreme Court of Ohio succinctly explained the rule that an issue must be administratively raised before the commission has the duty to address and determine the issue in its order. The *Quarto* court states:

> "Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." * * * Nor do appellate courts have to consider an error which the complaining party "could have called, but did not call, to the trial court's attention at a time when such

error could have been avoided or corrected by the trial court."

These rules are deeply embedded in a just regard for the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus, they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal. In addition, they protect the role of the courts and the dignity of the proceedings before them by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error.

*Id.* at 81. (Citations omitted.)

**Basic Law—PTD—Workforce Abandonment**

{¶ 70} Ohio Adm.Code 4121-3-34 provides the commission's rules for the adjudication of PTD applications.

{¶ 71} Thereunder, Ohio Adm.Code 4121-3-34(D) provides guidelines for the adjudication of PTD applications.

{¶ 72} Ohio Adm.Code 4121-3-34(D)(1)(d) currently provides:

If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 73} Paragraphs two and three of the syllabus of *State ex rel. Baker Material Handling Corp. v. Indus. Comm.,* 69 Ohio St.3d 202 (1994), state:

An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market.

An employee who retires subsequent to becoming permanently and totally disabled is not precluded from

> eligibility for permanent total disability compensation regardless of the nature or extent of the retirement.

**Analysis**

{¶ 74} A claimant who is medically able to work voluntarily removes himself from the workforce when he fails to return to other employment or search for other employment for an extended period of time following a voluntary or involuntary termination of employment. The voluntary abandonment of the workforce renders the claimant ineligible for both TTD and PTD compensation; *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245 (regarding TTD compensation); *State ex rel. Black v. Indus. Comm.,* 137 Ohio St.3d 75, 2013-Ohio-4550 (regarding PTD compensation).

{¶ 75} Here, Navistar's counsel elicited testimony from claimant that he failed to look for work (or to find work) following the closing of the gunshop in 2010. Although claimant testified that he was becoming physically unable to perform the duties of gunshop instructor at the time of the gunshop's closing, medical evidence is lacking as to claimant's actual ability to work at the time of the gunshop's closing.

{¶ 76} Given that Navistar's counsel elicited testimony from claimant that could support a finding that he voluntarily abandoned the workforce following the closing of the gunshop, the issue of workforce abandonment was clearly raised by the testimony notwithstanding that Navistar's counsel failed to directly ask the SHO to find a voluntary abandonment of the workforce.

{¶ 77} *Pierron* is a seminal case in the law of workers' compensation. It's progeny has created extensive law regarding the defense of workforce abandonment in PTD proceedings at the commission. *Black.* Ordinarily, the commission and its hearing officers are expected to have some familiarity with developing case law on important issues. Here, given the clarity of the testimony, the issue was clearly raised, and the commission had the duty to address the issue. Because it failed to do so, it abused its discretion.

**The Navistar Retirement Papers**

{¶ 78} The magistrate disagrees with Navistar's suggestion that the Navistar retirement papers must be viewed as evidence before the SHO who issued his order of May 10, 2016 awarding PTD compensation. In its reply brief, Navistar argues:

> Here, it is indisputable that evidence of voluntary retirement was raised both in front of the SHO through Mr. Bisdorf's testimony and in Navistar's Motion for Reconsideration.

(Navistar's Reply Brief at 4-5.)

{¶ 79} As earlier noted, the Navistar retirement papers were attached to Navistar's motion for reconsideration as an exhibit. However, the commission denied Navistar's motion for reconsideration by an order mailed July 1, 2016.

{¶ 80} Clearly, Navistar's belated presentation of the Navistar retirement papers with its motion for reconsideration cannot be viewed as evidence before the SHO that somehow raised the issue of a voluntary workforce abandonment. Thus, Navistar is incorrect in stating that "voluntary retirement was raised" by filing the motion for reconsideration. *See State ex rel. Cordray v. Indus. Comm.*, 54 Ohio St.3d 99 (1990) (The commission has the discretion to accept or reject evidence submitted after the hearing on the merits.).

{¶ 81} At oral argument before the magistrate, Navistar's counsel further suggested that the Navistar retirement papers must be viewed as evidence before the SHO at the May 10, 2016 hearing because the papers were filed with the commission on September 21, 2007 in defense of claimant's August 30, 2007 motion for TTD compensation. But the transcript of the May 10, 2016 hearing does not show that Navistar's counsel, or anyone else, referred the SHO to those papers. Clearly, the SHO was under no duty to search the industrial commission claim file for possible evidence of workforce abandonment that might exist regarding an earlier motion for another type of compensation.

{¶ 82} Notwithstanding that the Navistar retirement papers were not submitted to the SHO for consideration at the May 10, 2016 hearing, the magistrate nevertheless finds that the issue of a voluntary workforce abandonment was raised during claimant's hearing testimony as previously explained. That claimant voluntarily retired from his employment with Navistar in early 2003 is not a prerequisite for finding that claimant voluntarily abandoned the workforce in 2010 when the gunshop closed and he failed to look for other employment.

**Conclusion**

{¶ 83} Accordingly, based on the above analysis, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the May 10, 2016 order of its SHO awarding PTD compensation, and to enter an order that determines whether claimant voluntarily abandoned the workforce following the closing of the gunshop. If the commission determines that claimant voluntarily abandoned the workforce, it shall enter an order denying PTD compensation on grounds that claimant is ineligible for the compensation. If the commission determines that claimant did not voluntarily abandoned the workforce, it shall address the merits of the PTD application.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).