[Cite as *State ex rel. Liberty Steel Prods., Inc. v. Indus. Comm.*, 2024-Ohio-2338.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Liberty Steel Products, Inc., | : | |
| Relator, | : | |
| | : | No. 22AP-169 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 18, 2024

**On brief:** *Keating, Muething & Klekamp PLL*, and *Gregory J. Robinson*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Natalie J. Tackett*, for respondent, Industrial Commission of Ohio.

**On brief:** *Heller, Maas, Moro & Magill, Joseph A. Moro*, and *Patrick J. Moro*, for respondent, Kenneth Yousko.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION
AND MOTIONS TO DISMISS

MENTEL, P.J.

{¶ 1} Relator, Liberty Steel Products, Inc. ("relator"), filed this original action seeking a writ of mandamus ordering respondent, the Industrial Commission of Ohio ("commission"), to vacate the November 24, 2021 Record of Proceeding finding that relator had committed a violation of a specific safety requirement ("VSSR") and ordering it to correct the VSSR after its employee, Kenneth Yousko ("claimant"), was injured while handling a cleaning solution with ineffective safety equipment. In addition, claimant filed a motion to dismiss the action under Civ.R. 12(B)(6), arguing that relator failed to state a

claim in mandamus, and relator filed a motion to dismiss Chairman Jim Hughes as a party to this action.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate recommends that we deny the request for a writ of mandamus and overrule the motions to dismiss as moot. Relator has filed the following objections to the magistrate's decision.

{¶ 3} In the first objection, relator objects to the magistrate's conclusion that the commission did not abuse its discretion when it ordered relator to correct the VSSR. (Obj. at 1.) The commission issued the order after finding that there was no evidence that relator had corrected the violation by providing adequate protective equipment to its employees. According to relator, however, the magistrate's conclusion "ignores the evidence presented by Relator specifically showing the new version of gloves provided to employees as a part of its Request for Rehearing," thus rendering the corrective order "unnecessary." *Id*. at 1-2.

{¶ 4} R.C. 4121.47(B) states that once a VSSR is found, "the staff hearing officer shall, in addition to any award paid to the claimant, issue an order to the employer to correct the violation within the period of time the staff hearing officer fixes." As the magistrate noted, referring to the hearing at which the VSSR was found: "There was no evidence presented that the employer had corrected the violation by providing compliant gloves." (Mag.'s Decision at 7.) Because the staff hearing officer ("SHO") determined that relator had committed a VSSR, R.C. 4121.47(B) required the SHO to issue the corrective order. The magistrate's conclusion that this order was not an abuse of discretion is correct and consistent with the statute.

{¶ 5} Relator's underlying complaint in this objection is that the commission did not grant its request for a rehearing under Ohio Adm.Code 4121-3-20(E), as a rehearing would have allowed it to present evidence to support its assertion that it had corrected the VSSR. The regulation states that when evaluating a request for rehearing, the SHO

> shall review the motion for rehearing under the following criteria:
>
> (a) In order to justify a rehearing of the staff hearing officer's order, the motion shall be accompanied by new and additional proof not previously considered and which by due diligence

could not be obtained prior to the prehearing conference, or prior to the merit hearing if a record hearing was held and relevant to the specific safety requirement violation.

(b) A rehearing may also be indicated in exceptional cases where the order was based on an obvious mistake of fact or clear mistake of law.

Ohio Adm.Code 4121-3-20(E)(1).

{¶ 6}   In the request for rehearing, relator claimed that it was entitled to a rehearing and to present additional evidence because the company's provision of new protective gloves "was not an issue raised at the hearing, and no evidence was requested. Had it been raised, representatives for [relator] would have testified that following Claimant's injury, the Company has provided an additional option for protective gloves for its employees." (Dec. 23, 2021 Req. for Rehearing at 1.) However, R.C. 4121.47(B) put relator on notice that "an order to the employer to correct the violation" was a possible outcome of the proceeding. It was not the responsibility of the SHO or the commission to inform relator of its potential for liability under R.C. 4121.47(B), nor was it their responsibility to advise relator as to what evidence it should present at the hearing. Relator cannot shift its burden to present an adequate defense to avoid the corrective order onto the SHO or the commission. The standard for granting a rehearing is, in part, that the additional evidence "by due diligence could not be obtained prior to the prehearing conference, or prior to the merit hearing." Ohio Adm.Code 4121-3-20(E)(1)(a). By relator's own admission, it knew about but did not present the evidence of the new gloves, so it was not entitled to a rehearing to present that evidence. The first objection is overruled.

{¶ 7}   Second, relator objects to the magistrate's decision "to the extent that it goes beyond the Commission's Order and substitutes its own interpretation of the evidence." (Obj. at 3.) Relator claims that the magistrate independently determined the proper dilution ratio for the cleaning solution that injured the claimant and mischaracterized the commission's finding when he stated that the commission "believed the dilution ratio for claimant's cleaning purposes should be consistent with the 20-to-1 ratio used for mop-and-bucket usage." (Mag.'s Decision at 7.) According to relator, the magistrate failed to determine if there was "evidence to support the Commission's determination that the

[Materials Safety Data Sheet ("MSDS")] recommended a specific 20-to-1 dilution ratio for the work" that resulted in the injury. (Obj. at 4.)

{¶ 8} The magistrate's characterization of the SHO's findings was not a novel interpretation or a reweighing of evidence. In the findings of fact, the SHO quotes the portion of the testimony of the employee who ordered the cleaning solution to be diluted in water at a 3:1 ratio. The employee first insists that the 3:1 ratio was "listed in the MSDS." (Nov. 24, 2021 Record of Proceedings (hereinafter, "Order") at 3.) After the employee is shown the dilution ratios on the MSDS, he admits that he didn't know the proper dilution ratio for the solution. The order then states that the SHO "finds that the three-to-one dilution ratio of the Purple Dragon compound that the Injured Worker was working with on the date of injury was many multiple times stronger than the 20 to one dilution recommended by the MSD sheet." *Id.* at 5. In the conclusions of law, the SHO states that the MSDS "directs that the Purple Dragon concentrate be diluted to a ratio of at least 20 parts water to one part of product." *Id.* at 6. These statements demonstrate that the minimum dilution ratio on the MSDS was the standard by which the SHO evaluated the dilution ratio that relator's employee recommended. The minimum dilution ratio on the MSDS was 20:1, yet relator's employee incorrectly believed the MSDS to state a 3:1 ratio. The information on the MSDS and the testimony constituted some evidence for the commission's finding and conclusion. The magistrate's characterization of the ratio employed by relator as not being consistent with the MSDS is an accurate representation of the commission's findings, not a reweighing or reevaluation.

{¶ 9} Relator also believes that the magistrate provided his "own interpretation of the instructions provided to Claimant," asserting that there was no evidence provided to support the commission's determination that the claimant was specifically instructed to dip his hand (covered only by a nonprotective glove) into the improperly diluted cleaning solution. (Obj. at 5.) "The question for this court," according to relator, "is whether there is evidence to support the finding that Claimant was provided this specific instruction." *Id.* at 5-6. To answer the question, we return to the testimony of the employee who supervised the claimant, as quoted by the SHO, when he was asked how he instructed the claimant. He replied that he said: "To take the Scotch-Brite [pad] and to dip it into the bucket that has the dilution of the Purple Dragon" before cleaning the press. (Order at 3.) The

employee's answer is some evidence to support the finding that the claimant was specifically instructed to dip his hand into the solution. The magistrate properly rejected relator's argument "that the commission incorrectly found that claimant was instructed to place his gloved hand into the cleaning bucket to wet a Scotch Brite pad," as the employee specifically stated that he had done so. (Mag.'s Decision at 8.)

{¶ 10} Relator claims that the magistrate did not rely on the commission's stated reasons for concluding that the one-time malfunction defense did not apply, and instead improperly relied on his "own interpretation" of the record. (Obj. at 7.) Two of the magistrate's allegedly independent interpretations—"that the cleaning mixture was not properly diluted, and that the Claimant was not properly instructed on how to use his safety gloves"—have already been discussed as supported by the record. *Id.* at 8.

{¶ 11} In addition, relator claims that the magistrate improperly engaged in his "own reweighing of the evidence" when he stated that " 'despite the employer's claims that it did not instruct claimant to dip his hand into the solution, it is foreseeable that a worker might splash the solution on the back of the hands during the cleaning process or have to wring or squeeze the pad to clean it of soiled materials.' " *Id.*, quoting Mag.'s Decision at 10. The magistrate's observation does not "reweigh" the evidence. It is a restatement of the SHO's conclusion that relator "had a reasonable expectation that this Injured Worker would suffer corrosive burns to the back of his hands" because of the improper dilution, the instruction to dip his hand in the solution, and the absence of an adequately protective material on the gloves. (Order at 9.) The premise the magistrate states, that relator did not instruct the claimant to dip his hand into the solution, is a restatement of relator's argument, which itself is an incorrect statement of the record that the magistrate properly rejected. As the magistrate noted, relator's arguments challenging the commission's failure to apply the one-time malfunction defense are "based upon three mistaken factual conclusions unsupported by evidence." (Mag.'s Decision at 8.) Furthermore, the quoted observation is merely a hypothetical that relator presents out of context. The statement comes after the magistrate states that "there is no evidence that the employer communicated with claimant that he should not allow the cleaning solution to come in contact with the back of his gloved hand," followed by a number of specific instances in the record to support that assertion. (Mag.'s Decision at 10.) Even if we were to strike the

magistrate's hypothetical from the decision, it would have no effect on his conclusion that the commission did not err by failing to apply the one-time malfunction defense. For the foregoing reasons, the second objection is overruled.

{¶ 12} In the third objection, relator objects to the magistrate's conclusion that the commission did not abuse its discretion when it failed to quote or consider the entirety of Ohio Adm.Code 4123:1-5-17(I)(1). The commission's first conclusion of law was that relator violated Ohio Adm.Code 4123:1-5-17(I)(1). Its discussion began by quoting the following portion of the regulation:

> (I) Protection of the body and exposed parts and other protective equipment.
>
> (1) All persons who work in such a manner that their clothing may become wet with acids caustics or other injurious liquids will be provided with such gloves, aprons, coats, jackets, sleeves, or other garments made of rubber, or other materials impervious to such liquids as are needed to keep their clothing dry.

Ohio Adm.Code 4123:1-5-17. (*See* Order at 6.)

{¶ 13} Relator objects that the commission did not quote the last two sentences of Ohio Adm.Code 4123:1-5-17(I)(1), which state:

> Aprons will extend well below the top of boots to prevent such liquid from splashing into the boots. Provision of dry clean cotton clothing along with rubber shoes or short boots and an apron impervious to such liquids will be considered a satisfactory substitute where small parts are cleaned, plated, or acid-dipped in open tanks and rapid work is required.

{¶ 14} The magistrate concluded that the commission omitted the foregoing language because only the first portion of the regulation was relevant to the claim, but relator argues that this is not the "issue." (Obj. at 9.) Rather, the issue "is not just that the regulation was not fully quoted, but that it was not fully considered." *Id.* at 9-10. Relator then criticizes the magistrate's discussion of why the second portion of the regulation doesn't apply, calling it mere guesswork that "upholds the Commission's position without the Commission explaining what exactly its position is." *Id.* at 10.

{¶ 15} Similarly, relator's fourth objection argues that the magistrate's decision "misapplies" its defense under Ohio Adm.Code 4123:1-5-17(J) by describing it as an

assertion of the defense of unilateral negligence. (Obj. at 12.) Relator argues that the commission "abused its discretion by completely ignoring Relator's argument" under Ohio Adm.Code 4123:1-5-17(J). *Id*. at 13.

{¶ 16} The common ground in both the third and fourth objections concerns the commission's failure to address relator's arguments under Ohio Adm.Code 4123:1-5-17(I)(1) and (J). Relator raised arguments under both provisions of the regulation at the hearing. Relator's attorney argued that the gloves provided to the injured worker complied with Ohio Adm.Code 4123:1-5-17(I)(1), asserting that because the gloves provided were "dipped in rubber to the entire palm," it "would be pretty uncontroversial to say that those [gloves] therefore complied with" the regulation. (Tr. at 61.) The attorney's argument then addressed the final portion of the regulation:

> The requirement * * * says that provisions of * * * clean cotton clothing is a satisfactory substitute when small parts are being cleaned. As Mr. Glaser explained today, while cleaning the press, Mr. Yousko was going to have to clean very small parts. You have to get into a lot of tight corners, and so under the exact language of the regulation it says that it has to be rubber, but if you're doing small parts, it can also be that dry clean cotton, which is what -- what we have with these gloves.

*Id*. at 61-62.

{¶ 17} Relator's attorney also argued for the application of Ohio Adm.Code 4123:1-5-17(J), which states: "It is the responsibility of the employee to properly use the equipment provided by the employer as specified in this rule." Relator's attorney claimed that according to Mr. Glaser's instructions

> for use of the protective equipment, as well as for the cleaning of the press itself, when you properly use the equipment, the back of your hand at no point comes into contact with * * * the cleaning material. And I point out that [Ohio Adm.Code 4123:1-5-17(J)] clearly states that it shall be the responsibility of the employee to properly use the equipment provided by the employer as required by this rule.

(Tr. at 62.)

{¶ 18} When discussing Ohio Adm.Code 4123:1-5-17(I)(1) and concluding that relator had violated the regulation, the SHO reasoned as follows:

> The use of this highly concentrated mixture of Purple Dragon mandates that proper gloves be provided to the Injured Worker to protect against the risk of chemical burns to the skin of the Injured Worker's hands.
>
> * * *
>
> However, the protective Nitrile coating did not completely cover the fabric of the gloves at the back of the gloves. As a consequence, the fabric on the back of the Injured Worker's gloves became saturated with the highly concentrated mixture and directly resulted in corrosion burns of the Injured Worker's hands. The Injured Worker testified that within 20 minutes to one-half hour, his gloves became wet with the mixture causing burns to both hands. He also testified that that the mixture entered the inside of his gloves through the opening between the gloves and the back of his hands as he was working. The Hearing Officer finds that the [gloves] were insufficient and ineffective in protecting the Injured Worker against the risk of chemical burns to his hands from the Purple Dragon mixture. The Hearing Officer finds that as a direct and proximate result of the deficiencies in the [gloves], and the improper and dangerous dilution ratio * * *, the Injured Worker suffered first degree corrosion burns to the back of his left and right hands. This finding is based upon [three medical reports]. The proximate cause criteria for establishing a violation of a specific safety regulation * * * is therefore established. [The] Injured Worker has satisfied his requisite burden of proof in establishing the Employer's violation of Ohio Adm.Code 4123:1-5-17(I)(1).

(Order at 6-7.)

{¶ 19} In relator's Request for Rehearing, it argued that the foregoing discussion "fails to include the second half of the regulation." (Dec. 23, 2021 Req. for Rehearing at 6.) Relator asserted that "Claimant was working with small parts during the time of his injury, and thus the portion of the glove not coated in rubber still satisfied the language of the regulation." *Id.* Relator also argued that the defense stated in the regulation applied in any situation "where small parts are cleaned, or where small parts are plated, or where small parts are acid-dipped in open tanks and rapid work is required," contrary to the position stated by the injured worker's attorney at the hearing. *Id.* at 7. Relator also argued that the regulation was ambiguous and, under proper standards for interpreting VSSR regulations, any ambiguity had to be resolved in its favor. *Id.* "The Order, however, contains no mention

of the exemption, nor discussion of its application in this matter, despite [relator] raising this defense at the hearing." *Id.* In addition, relator pointed out that the SHO's order "wholly fail[ed] to consider the application of [Ohio Adm.Code] 4123:1-5-17(J)," even though relator had also "rais[ed] this defense at the hearing." *Id.* at 7-8. The commission denied the motion for rehearing, stating that relator had not "shown that the order of 11/24/2021 was based on an obvious mistake of fact or on a clear mistake of law." (Feb. 10, 2022 Record of Proceedings at 1.)

{¶ 20} The Supreme Court of Ohio has recognized several circumstances in which the commission's failure to address an issue raised by an employer is a mistake of law. In *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 15, "the commission determined that the staff hearing officer's failure to address the employer's critical argument about an intervening injury was a mistake of law." The claimant argued that "the hearing officer was not required to address an intervening injury; thus, failure to address the issue was not a mistake of law justifying the exercise of continuing jurisdiction." *Id.* The court disagreed, noting that "an intervening injury is critical to the issue of proximate cause and to determining whether the claimant is eligible for permanent-total-disability compensation." *Id.* at ¶ 20. The court also emphasized that the relevant regulation "requires the hearing officer to specifically determine whether the claimant established proximate cause." *Id.*, citing Ohio Adm.Code 4121-3-34(D)(1)(h) and (3)(e). For these reasons, *Sheppard* held that "the commission did not abuse its discretion when it determined that the hearing officer's failure to address the intervening-injury argument was a mistake of law that justified the commission's reopening the claim to examine the issue." *Id.* at ¶ 22.

{¶ 21} In so holding, *Sheppard* relied on *State ex rel. Mackey v. Ohio Dept. of Edn.*, 130 Ohio St.3d 108, 2011-Ohio-4910, ¶ 1, which held that the commission properly granted an employer's motion for reconsideration after a staff hearing officer "did not address the issue" of the employee's voluntary retirement, even though the issue "was discussed extensively" at the hearing. The failure to address the question of whether the employee's retirement was voluntary or involuntary was "a clear mistake of law" because her eligibility for permanent total disability benefits depended on its answer. *Id.* at ¶ 5. *See also State ex rel. Stevens v. Indus. Comm.*, 142 Ohio St.3d 313, 2015-Ohio-1352, ¶ 17 ("Because voluntary

abandonment of all employment is an affirmative defense and an issue critical to eligibility for compensation for permanent total disability, if evidence of voluntary abandonment has been brought into issue, a hearing officer's failure to address the issue constitutes a mistake of law.").

{¶ 22} In *State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 16, the Supreme Court of Ohio held that the commission did not abuse its discretion when it failed to address evidence of voluntary abandonment introduced at the hearing because the employer did not properly bring such evidence "into issue," as the regulation required. The employer had only raised the issue in its motion for reconsideration after the hearing. *Id.* at ¶ 17. Because the defense was not properly raised during the hearing, it would have been "an abuse of the hearing officer's discretion to address it, because the claimant has not been afforded due process, i.e., sufficient notice and an opportunity to present evidence on the issue." *Id.* at ¶ 16, citing *State ex rel. Jenkins v. Indus. Comm.*, 10th Dist. No. 16AP-534, 2017-Ohio-7896, ¶ 5.

{¶ 23} The due process concern expressed in *Navistar* does not apply in this case. Relator raised arguments under Ohio Adm.Code 4123:1-5-17(I)(1) and (J) at the hearing. (Tr. at 59-64.) The claimant's attorney had the opportunity to respond to those arguments, and did specifically address relator's argument under the second portion of Ohio Adm.Code 4123:1-5-17(I)(1). *Id.* at 65 (stating "when the employer argues that the provision in [(I)(1)] makes an exception for that, the exception, as stated in the section, is * * * with open tanks and [when] rapid work is required. That's not the case here.") However, the SHO's order addressed neither argument, with no mention of the regulatory language relator invoked as a defense. Relator again raised these arguments in its request for rehearing, but the commission denied the request and rejected relator's contention that the SHO's failure to consider these defenses was a mistake of law. Under *Sheppard*, *Mackey*, and *Stevens*, relator had a legal right to have those defenses considered. Relator properly raised the defenses, cited the specific regulations they contained, and the claimant was on notice of the defenses and had the opportunity to respond to them. Nevertheless, the SHO's order omitted any mention of those defenses or relator's arguments concerning them. This was a mistake of law. Consequently, a limited writ must issue remanding this matter to the

commission to have relator's arguments under Ohio Adm.Code 4123:1-5-17(I)(1) and (J) addressed.

{¶ 24} In arguing against relator's objections, the commission does not address the SHO's failure to consider the defense raised under Ohio Adm.Code 4123:1-5-17(I)(1). (*See* Oct. 26, 2023 Memo in Opp. at 10-13.) With regard to Ohio Adm.Code 4123:1-5-17(J), the commission asserts that the provision does not apply because the claimant did not use the gloves "improperly," as they "were not worn on the wrong hands or inside out," and he "did not modify the gloves or cut off fingers, pieces, or parts of the gloves." *Id.* at 11-12. Conversely, relator argues: "The record is clear that when used properly, the gloves provided to [its] employees have never failed to provide adequate protection." (Obj. at 13.)

{¶ 25} The parties' arguments rely on evidentiary positions that this court lacks the authority to referee. "It is well-settled that the commission has the exclusive authority to determine disputed facts and weight of the evidence." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206 (1991). "The commission has exclusive authority to 'hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees * * * .' " *State ex rel. Colliver v. Indus. Comm.*, 84 Ohio St.3d 476, 477-78 (1999), quoting Ohio Constitution, Article II, Section 35. Although it may be possible to search the order for evidentiary findings that support one position or another under the regulations it failed to address, doing so would only serve as a proxy for the application of those defenses to the evidence that the commission must make in the first instance. Accordingly, issuance of a limited writ is necessary so that, on remand, the regulations and relator's arguments invoking them may be addressed.

{¶ 26} For the foregoing reasons, relator's first and second objections are overruled and the third and fourth objections are sustained. The magistrate's decision is adopted with respect to its recommendation to dismiss the claimant's motion to dismiss as moot, as well as with respect to the issues raised in relator's first and second objections. The commission's April 13, 2022 motion to dismiss its Chairman Jim Hughes as a party is overruled as moot. The magistrate's decision is rejected insofar as it finds that the commission did not abuse its discretion by failing to address relator's arguments under Ohio Adm.Code 4123:1-5-17(I)(1) and (J), and insofar as it recommends denying the writ.

We grant a limited writ and remand this matter to the commission only for consideration of relator's arguments concerning the application of Ohio Adm.Code 4123:1-5-17(I)(1) and (J).

*Objections overruled in part and sustained in part*;
*decision adopted in part and rejected in part*;
*motions to dismiss overruled as moot*;
*limited writ of mandamus granted.*

BEATTY BLUNT and LELAND, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Liberty Steel Products, Inc., | : | |
| Relator, | : | |
| v. | : | No. 22AP-169 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 31, 2022

*Keating, Meuthing, & Klekamp, LLC,* and *Gregory J. Robinson*, for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Heller, Maas, Moro & Magill Co., LPA, Patrick J. Moro,* and *Joseph A. Moro,* for respondent Kenneth Yousko.

IN MANDAMUS
ON RESPONDENT KENNETH YOUSKO'S
MOTION TO DISMISS
.

{¶ 27} Relator, Liberty Steel Products, Inc. ("Liberty" or "employer"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order that found the employer violated a specific safety requirement ("VSSR"). The claimant has also filed a April 15, 2022, motion to dismiss pursuant to Civ.R. 12(B)(6).

Findings of Fact:

{¶ 28} 1. On September 5, 2018, Kenneth Yousko ("claimant") was injured during the course of his employment with Global Technical Recruiters ("GTR"), a temporary employment provider, while he was placed at Liberty.

{¶ 29} 2. According to the hearing testimony of claimant's supervisor, John Glasser, Glasser instructed claimant, along with a co-worker, ("John 2"), to clean a press machine using a bucket of cleaning solution prepared by John 2. Glasser instructed John 2 to fill the bucket with three parts water, one part Purple Dragon cleaning/degreasing solution (tetrapotassium pyrophosphate). Glasser testified that the ratio he instructed John 2 to use was not in the Material Safety Data Sheet ("MSDS"), and he did not know what dilution ratio should be used. Glasser admitted that the MSDS indicated that a 20-to-1 dilution ration was to be used if using a floor scrubber, 40-to-1 if you're using a pressure washer, and 20-to-1 if you're using a mop and bucket. Glasser also admitted that the dilution ration he advised John 2 to use did not comply with the MSDS. The employer gave claimant gloves made with a fabric lining coated with nitrile, a synthetic rubber that protects against organic solvents, oils, and bases. The nitrile rubber covered only the fingers, palm, and upper portion of the back of the gloves. Claimant was to dip a Scotch Brite abrasive pad into the bucket of solution and then scrub various large and small parts on the press.

{¶ 30} 3. While using the Purple Dragon mixture, claimant periodically put his hand in the bucket. Claimant's gloves, hands, and wrists came in contact with the Purple Dragon liquid. His hands started burning within 20 minutes of using the solution.

{¶ 31} 4. Although claimant reported no issues to the employer the day he used Purple Dragon, on the next day, claimant reported to his supervisors that his hands were in pain. The employer gave him burn cream, and he developed blisters, swelling, cracks, and bleeding. The employer told claimant to seek medical treatment.

{¶ 32} 5. The MSDS for Purple Dragon indicates that Purple Dragon will cause severe burns to exposed skin and directs that the product should not be used without proper personal protective equipment, such as rubber gloves, and provides that skin exposed to the chemical should be washed with water and clothing should be removed.

{¶ 33} 6. A Purple Dragon information sheet indicates that the liquid is a premium, non-butyl EDTA-free degreasant/detergent concentrate to be used to dissolve oils and

greases, lifting and emulsifying them for easy soil removal. The information sheet provides that the user should select the appropriate ratio to control the desired cleaning performance.

{¶ 34} 7. Claimant filed a workers' compensation claim, and the claim was allowed against GTR for corrosion of first degree of back of left hand; corrosion of first degree of back of right hand; anxiety disorder, unspecified; and depressive disorder, unspecified. GTR was his employer for purposes of the workers' compensation claim.

{¶ 35} 8. On September 18, 2019, claimant filed an application for VSSR with the commission. Liberty is the employer for purposes of the VSSR claim. Claimant alleged the employer violated Ohio Adm.Code 4123:1-5-17(C)(1), Ohio Adm.Code 4123:1-5-17(I)(1), and Ohio Adm.Code 4123:1-5-17(I)(2).

{¶ 36} 9. Ohio Adm.Code 4123:1-5-17(C)(1) provides:

(C) Specifications of general application.

(1) Personal protective equipment furnished by the employer will be issued to the employee in sanitary and proper condition so that it will effectively protect against the hazard involved.

{¶ 37} 10. Ohio Adm.Code 4123:1-5-17(I)(1) and (2) provide:

(I) Protection of the body and exposed parts and other protective equipment.

(1) All persons who work in such a manner that their clothing may become wet with acids caustics or other injurious liquids will be provided with such gloves, aprons, coats, jackets, sleeves, or other garments made of rubber, or other materials impervious to such liquids as are needed to keep their clothing dry. Aprons will extend well below the top of boots to prevent such liquid from splashing into the boots. Provision of dry clean cotton clothing along with rubber shoes or short boots and an apron impervious to such liquids will be considered a satisfactory substitute where small parts are cleaned, plated, or acid-dipped in open tanks and rapid work is required.

(2) Facilities for quick drenching or flushing of the eyes and body will be provided within the work area, where employees are exposed to injurious corrosive materials. Where plumbing is not available and where storage batteries of the enclosed type with explosion-proof vents are serviced exclusively, portable,

self-contained eyewash equipment may be provided in lieu of the quick drenching or flushing facilities. Where portable self-contained eyewash equipment is used in lieu of drenching or flushing facilities, it will be capable of delivering to the eye no less than 1.5 liters (0.4 gallons) per minute for a minimum of fifteen minutes.

{¶ 38} 11. On October 28, 2021, a hearing was held before a staff hearing officer ("SHO"). On November 24, 2021, the SHO issued an order that granted in part and denied in part the VSSR application and found the following: (1) the 3-to-1 dilution ratio for the Purple Dragon that claimant was using was many multiple times stronger than the 20-to-1 dilution ration recommended by the MSDS; (2) claimant was instructed to place his hand in this powerful mixture to wet the Scotch Brite pad; (3) the gloves provided to claimant did not have the nitrile covering to protect the back of the hands from exposure to the caustic Purple Dragon mixture; (4) the caustic solution made its way through the unprotected fabric material at the back of the gloves and into the inside of claimant's gloves, soaking them; (5) after exposure to the Purple Dragon, claimant's hands became swollen, cracked, bloodied, and blistered; (6) claimant sought treatment at a hospital on September 7, 2018; (7) the employer failed to comply with Ohio Adm.Code 4123:1-5-17(C)(1); (8) Ohio Adm.Code 4123:1-5-17(C)(1) is closely linked with Ohio Adm.Code 4123:1-5-17(I)(1), and both require a determination as to whether the protective personal equipment issued to claimant for performing his cleaning activities with Purple Dragon protected against the risk of chemical burns to the skin on his hands; (9) the gloves were insufficient for protecting claimant's hands against the harm of chemical burns from the Purple Dragon mixture; (10) claimant testified that within 20 to 30 minutes, his gloves became wet with the mixture, causing burns to both hands; (11) the gloves were insufficient and ineffective in protecting claimant against the risk of chemical burns to his hands; (12) Ohio Adm.Code 4123:1-5-17(I)(2) was not violated; (13) there was a bathroom facility near the area where claimant was working with the Purple Dragon mixture that was available to quickly drench or flush claimant's eyes and body; (14) the employer is unable to successfully assert the one-time malfunction defense; (15) there are compelling factors that would have alerted the employer that the gloves offered inadequate protection against chemical burns to claimant's hands: (a) the employer instructed claimant to use the Purple Dragon at a concentration ratio significantly greater than that directed by the MSDS; (b) Glasser could

provide no reasonable explanation for his dilution-ratio instructions; (c) the employer directed claimant to dip his gloved hand into the bucket of solution to wet the pad; (d) the gloves did not have the nitrile covering the complete back of the gloves, allowing the fabric at the backside of the gloves to become saturated with the caustic compound; (e) the gloves were not tight fitting, allowing the solution to enter into the gloves through the opening between the back of the hand and the glove; (f) the employer had a reasonable expectation that claimant would suffer corrosive burns to the back of his hands through the manner in which he was instructed to perform his work given these factors; and (g) the employer should have been aware that claimant would have suffered chemical burns through the manner in which he was required to perform his job tasks; (16) the employer violated Ohio Adm.Code 4123:1-5-17(I)(1) and (C)(1) and is entitled to an additional award of compensation in the amount of 35 percent of the maximum weekly rate; and (17) an order requiring correction of the violations is appropriate because no evidence has been presented to establish that the employer has acquired the appropriate rubber gloves that will provided protection against the risk of chemical burns to the hands from the use of corrosive and caustic chemicals like Purple Dragon.

{¶ 39} 12. The employer filed a request for rehearing, which the commission denied on February 10, 2022.

{¶ 40} 13. On March 15, 2022, the employer filed a complaint for writ of mandamus.

{¶ 41} 14. On April 15, 2022, claimant filed a motion to dismiss pursuant to Civ.R. 12(B)(6).

Conclusions of Law and Discussion:

{¶ 42} The magistrate recommends that this court deny the employer's petition for writ of mandamus and deny as moot the motion to dismiss filed by claimant.

{¶ 43} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 44} To establish a VSSR, a claimant must prove that: (1) there exists an applicable and specific safety requirement in effect at the time of the injury; (2) the employer failed to

comply with the requirements; and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257 (1972).

{¶ 45} The interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193 (1983). However, because a VSSR is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989). The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. *Trydle*; *State ex rel. A-F Industries, ACME-FAB Div. v. Indus. Comm.*, 26 Ohio St.3d 136 (1986). When the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987). Furthermore, a safety requirement must be specific enough to plainly apprise an employer of its legal obligations to its employees. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988).

> R.C. 4121.47(B) provides, in pertinent part:
>
> (B) If a staff hearing officer, in the course of the staff hearing officer's determination of a claim for an additional award under Section 35 of Article II, Ohio Constitution, finds the employer guilty of violating division (A) of this section, the staff hearing officer shall, in addition to any award paid to the claimant, issue an order to the employer to correct the violation within the period of time the staff hearing officer fixes.

{¶ 46} In the present matter, the employer first asserts that the commission erred and abused its discretion because it based its decision on three factual conclusions not supported by the evidence. First, the employer argues that the commission incorrectly determined that an order requiring corrective action was necessary because no evidence was presented to establish that the employer has acquired appropriate rubber gloves that will provide protection. The employer claims this was not an issue raised at the hearing, and no evidence was requested. If it had been raised, the employer indicates, it would have presented evidence that, following claimant's injury, it provided an additional option for protective gloves.

**{¶ 47}** However, the magistrate can find no error or abuse of discretion. The SHO found that an order requiring correction of the violations found was appropriate because no evidence was presented to establish that the employer acquired appropriate rubber gloves to provide protection against the risk of chemical burns to the hands from the use of caustic and corrosive chemicals such as Purple Dragon. The SHO's order was proper. R.C. 4121.47(B) makes mandatory that if an SHO finds the employer guilty of a VSSR, the SHO must issue an order to the employer to correct the violation within the period of time the SHO fixes. There was no evidence presented that the employer had corrected the violation by providing compliant gloves. It is noteworthy that the employer's theory in the VSSR case was that the gloves issued to claimant were compliant. Having found that the gloves supplied to claimant were not compliant, and finding there was no evidence in the record that the employer had made compliant gloves available subsequently, the SHO did not abuse his discretion when he ordered the employer to correct the violation.

**{¶ 48}** Second, the employer argues that the commission incorrectly found that the 3-to-1 dilution ratio used at the time of claimant's injury was many times stronger than the 20-to-1 dilution ratio recommended by the MSDS. The employer asserts that the only evidence regarding the recommended dilution ratios is an MSDS providing rates for floor scrubbing, pressure washing, and mop-and-bucket usage, which shows that dilution rates can vary widely based upon the specific use. The employer points out there was no dilution ratio provided for scrubbing a large, greased press with small parts. The employer also points out that the MSDS indicates that rubber-coated gloves are appropriate protection even when handling undiluted Purple Dragon.

**{¶ 49}** However, Glasser admitted that the dilution ratio he instructed John 2 to use, 3-to-1, was not in the MSDS, although he initially claimed it was. He also admitted he did not know what dilution ratio should be used, and that the one he used did not comply with the MSDS. Glasser testified that the MSDS indicated that a 20-to-1 dilution ration was to be used if using a floor scrubber, 40-to-1 if using a pressure washer, and 20-to-1 if using a mop and bucket. Although Glasser testified that he had always used a 3-to-1 ratio, the commission chose not to believe Glasser's testimony that this should be the proper ratio, given the evidence of much, much higher ratios given in the MSDS. The commission believed the dilution ratio for claimant's cleaning purposes should be consistent with the

20-to-1 ratio used for mop-and-bucket usage. Furthermore, the employer's argument that the MSDS indicated that rubber-coated gloves are appropriate protection when handling even undiluted Purple Dragon is unpersuasive. The gloves the employer issued claimant were only partially rubber coated. The uncoated back of the gloves permitted Purple Dragon to saturate the permeable glove fabric and come in contact with the skin on the hands, and the wrist area of the gloves also allowed Purple Dragon to enter the glove and contact the skin. The magistrate finds no abuse of discretion.

{¶ 50} Third, the employer argues that the commission incorrectly found that claimant was instructed to place his gloved hand into the cleaning bucket to wet a Scotch Brite pad, which allowed the back of the gloves to become saturated. The employer asserts that if claimant followed the appropriate procedure, the cleaning of the press should not have exposed the back of the gloves to the cleaning solution. The employer points to Glasser's testimony that there was no need to submerge the whole hand into the cleaning solution and if using the gloves properly, there was no reason or way that the wrist or back of the hand should come in contact with the cleaning solution.

{¶ 51} However, the employer presented no evidence that claimant was instructed that the proper cleaning procedure was to dip only the Scotch Brite pad into the Purple Dragon and completely avoid contact between the Purple Dragon and the back of or wrist of his gloved hand. In fact, claimant testified that he was given no instructions from the employer, and was merely told to go with John 2, who would explain what to do. Furthermore, any contention that a worker who is instructed to dip a pad into a bucket of cleaning solution is supposed to implicitly not contact the solution with the back of his gloved hand is also not convincing. The mere fact that the employer issued gloves to claimant does not make obvious that claimant should not allow the Purple Dragon to contact the back of his gloves. Claimant could have instead believed the gloves were for protection from the abrasive pad or protection from sharp parts of the machinery. In addition, although one can imagine it possible to dip only the abrasive pad and rubber-protected fingers of the glove into the cleaning solution, there was no evidence that the "proper" way to use these types of gloves is to not allow the cleaning solution to contact the back of the gloves or that the employer instructed claimant that this was the proper way to use the gloves. It was certainly foreseeable that a worker repeatedly dipping a pad into a

cleaning solution might contact that solution on the back of his hand by accident. The magistrate can find no abuse of discretion by the commission, in this respect.

{¶ 52} The employer next argues that the commission abused its discretion because it failed to apply the one-time malfunction defense based upon three mistaken factual conclusions unsupported by evidence. Safety regulations do not impose strict liability on employers whenever a safety device fails. "[T]he purpose of specific safety requirements [is to provide] *reasonable*, not absolute, safety for employees. Decisions of this court have acknowledged the practical impossibility of guaranteeing that a device will protect against all contingencies or will never fail." (Emphasis sic.) *State ex rel. Jeep Corp. v. Indus. Comm.*, 42 Ohio St.3d 83, 84 (1989). Thus, the employer need not provide a fool-proof guard but must provide only a guard that is sufficient to protect the employee. *State ex rel. Cincinnati Drum Serv., Inc. v. Indus. Comm.*, 10th Dist. No. 87AP-534, 1989 Ohio App.Lexis 438 (Feb. 9, 1989).

{¶ 53} The Supreme Court of Ohio has recognized the "one-time malfunction" exception or defense. A safety rule "does not purport to impose absolute liability for an additional award whenever a safety device fails. The regulation does not forewarn the employer that, in addition to providing a safety device, the safety device must also be completely failsafe." *State ex rel. M.T.D. Prods., Inc. v. Stebbins*, 43 Ohio St.2d 114, 118 (1975). Thus, "[t]he fact that a safety device that otherwise complies with the safety regulations failed on a single occasion is not alone sufficient to find that the safety regulation was violated." *Id*. Under this exception, the question before the commission is "whether [the employer] had ever been forewarned of the malfunction on the date of injury by a prior malfunction of the safety device." *State ex rel. Precision Thermo-Components, Inc. v. Indus. Comm.*, 10th Dist. No. 09AP-965, 2011-Ohio-1333, ¶ 29. Therefore, the issue under this exception is whether there was evidence of a prior history of malfunctions or such that the employer should have been aware that a malfunction would occur.

{¶ 54} Here, the employer first contends that the commission erred in refusing to apply the one-time malfunction defense when it erroneously found that the employer instructed claimant to use the Purple Dragon at a concentration ratio significantly greater than that directed by the MSDS, but the MSDS provided no dilution recommended for the type of work claimant was performing, and the recommendations provided for less arduous

work vary significantly. However, the magistrate has already addressed the employer's same dilution-ratio argument above and rejected it. Therefore, this argument is again not well taken.

{¶ 55} The second and third contentions are related. The employer argues that the commission erred in refusing to apply the one-time malfunction defense when it found that the employer directed claimant to dip his gloved hand into the bucket of Purple Dragon to wet a Scotch Brite pad, which he then used to clean a press machine. The employer also argues that the commission erred in refusing to apply the one-time malfunction defense when it found that the gloves were insufficient because the fabric on the backside of the gloves could become saturated and that because the gloves were not tight-fitting, leaving an opening between the back of the hand and the glove. The employer contends that there was no evidence on the record that claimant was provided any instruction to completely dip his hand into the bucket of cleaning solution. The employer claims that it never had any similar experience with an employee exposed to the cleaning solution, and the gloves in use the day of the injury always protected the employees' hands. The employer asserts it had no reason to expect the gloves would not be effective.

{¶ 56} However, again, there is no evidence that the employer communicated with claimant that he should not allow the cleaning solution to come in contact with the back of his gloved hand. Glasser did not give instructions to claimant as to how to use the gloves. He was told to dip the pad into the cleaning solution. The commission could have easily found unpersuasive any implication that claimant should have known that he was not to contact the back of his gloved hand with the solution. Furthermore, the gloves were clearly not compliant with Ohio Adm.Code 4123:1-5-17(I)(1), in that Purple Dragon was an injurious liquid that could damage skin, and the gloves provided were not completely covered in synthetic rubber or other impervious materials. Instead, they were made partially from permeable fabric that allowed the injurious liquid to contact and damage skin. In addition, despite the employer's claims that it did not instruct claimant to dip his hand into the solution, it is foreseeable that a worker might splash the solution on the back of the hands during the cleaning process or have to wring or squeeze the pad to clean it of soiled materials. Knowing Purple Dragon to be harmful to skin per the MSDS put the

employer on notice that providing a glove only partially coated with synthetic rubber could result in injury to the employee.

{¶ 57} The employer also argues that the commission failed to accurately quote Ohio Adm.Code 4123:1-5-17(I)(1), as it failed to include the second half of the regulation that "[p]rovision of dry clean cotton clothing along with rubber shoes or short boots and an apron impervious to such liquids will be considered a satisfactory substitute where small parts are cleaned, plated, or acid-dipped in open tanks and rapid work is required." The employer contends that the claimant was working with small parts and, thus, even though a portion of the glove was not coated in nitrile, the gloves still satisfied the regulation. The employer reads the provision to mean that the exception applies when either: (1) small parts are cleaned; (2) small parts are plated; or (3) small parts are acid-dipped in open tanks and rapid work is required. However, the commission was not required to include a provision that it did not believe applied to the facts at issue. Even if the employer's reading of Ohio Adm.Code 4123:1-5-17(I)(1) is correct, and the magistrate is not making that determination herein, Glasser described claimant's job duties as scrubbing various parts of a large press, with parts ranging in size from big to small. Thus, claimant was not only cleaning small parts. Furthermore, neither cotton clothing, rubber shoes, shorts boots, or an impervious apron would have provided claimant's hands any protection, and the provision's application to the facts at hand would be dubious at best, completely nonsensical at worst. The commission did not abuse its discretion, in this respect.

{¶ 58} Finally, the employer argues that the commission ignored the employer's defense under Ohio Adm.Code 4123:1-5-17(J), which provides that "[i]t is the responsibility of the employee to properly use the equipment provided by the employer as specified in this rule." Again, it is the employer's contention that claimant did not properly follow instructions when he dipped his full gloved hand into the cleaning solution to wet the Scotch Brite pad. The employer's argument is without merit. In essence, the employer is claiming that claimant was unilaterally negligent. The defense of unilateral negligence by an employee is available to an employer in a VSSR case only if the employer has complied with the specific safety requirement, and the employee has unilaterally violated it. *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, 156 Ohio St.3d 35, 2018-Ohio-5086, ¶ 39-40. "Because the critical issue in a VSSR claim is always whether the employer complied with

the [specific safety requirement], an employee's conduct, even if negligent, is not relevant to a VSSR determination unless the injury is caused by the claimant's deliberate circumvention or disabling of a safety device or refusal to use employer-provided safety equipment." *State ex rel. Sunesis Constr. Co. v. Indus. Comm.*, 152 Ohio St.3d 297, 2018-Ohio-3, ¶ 29 (citations omitted). The unilateral negligence defense is viable when an employee "removes or ignores equipment or instruction that complies with a specific safety requirement." *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 193 (2000). It must be kept in mind that specific safety requirements are intended to protect employees from their own negligence, folly, and stupidity, in addition to providing them with a safe working environment. *State ex rel. Blystone v. Indus. Comm.*, 14 Ohio App.3d 238 (10th Dist.1984).

{¶ 59} Here, however, the magistrate has already rejected the employer's argument that claimant did not properly follow instructions and use the gloves as intended when he dipped his full gloved hand into the cleaning solution to wet the Scotch Brite pad. The gloves were not the proper equipment here because the synthetic rubber coating did not cover the back of the fabric glove and allowed the cleaning liquid to saturate the fabric and come in contact with the skin. Furthermore, there is no evidence that the employer instructed claimant to not get the back of the gloves wet or allow the cleaning solution to touch his skin. Therefore, Ohio Adm.Code 4123:1-5-17(J) was not available to the employer, and the commission did not abuse its discretion.

{¶ 60} As for claimant's April 15, 2022, motion to dismiss pursuant to Civ.R. 12(B)(6), given the determination on the merits above, the motion is moot.

{¶ 61} Accordingly, it is the magistrate's recommendation that this court deny the employer's petition for writ of mandamus and deny as moot claimant's motion to dismiss.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).